Robert F. TURNER, Appellant,

v.

The STATE of Texas, Appellee.

No. 51762.

Court of Criminal Appeals of Texas.

Oct. 6, 1976.

Dissenting Opinion On State's Motion for Rehearing Jan. 26, 1977.

Robert D. McPherson, Pampa, for appellant.

Guy S. Hardin, Dist. Atty., Shamrock, Jim D. Vollers, State's Atty., and David S.

McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DALLY, Commissioner.

This is an appeal from a conviction for the offense of felony theft under the provisions of our former penal code; the jury assessed punishment at imprisonment for 10 years.

Appellant challenges the sufficiency of the evidence and contends that he was denied the right to a speedy trial. In light of our disposition of this cause, we need only address the latter contention.

The offense is alleged to have occurred on June 30, 1972; an indictment was returned against appellant on August 14, 1972. Although the record is not clear, appellant and the State agree that at the time the indictment was returned appellant was incarcerated in a federal penitentiary, and that thereafter, on August 15, 1972, a detainer was placed on appellant by the authorities of this State. Subsequent to the placing of the detainer, appellant made several efforts to obtain a speedy trial; a chronology and summary of those efforts and the official action taken as reflected by the record follows:

August 14, 1972: Indictment returned.

August 15, 1972: Detainer placed on appellant

December 29, 1972: Appellant filed a motion denominated "Petition for a Fair and Speedy Trial," requesting that he be brought to trial or, in the alternative, that the charges against him be dismissed.

July 17, 1973: Letter from Gray County District Clerk to appellant, informing him that the above motion had been filed and that a copy of the motion had been forwarded to the District Attorney.

July 23, 1973: Appellant filed a motion to quash the indictment, requesting, in the alternative, that he be granted a speedy trial.

August 26, 1973: Letter from appellant to Gray County District Clerk inquiring whether any action had been taken on his motion filed on July 23, 1973.

_____: Undated letter from Gray County District Clerk to appellant, repeating what she had stated in her letter of July 17, and indicating the District Attorney had advised her "that the other defendant in this case is trying to make restitution and this will need to be considered."

October 24, 1973: A letter bearing this date from the Attorney General of Texas to the District Attorney for the 31st Judicial District advised that action be taken on appellant's request for a speedy trial at the "earliest opportunity." [1]

1. "Honorable Guy Hardin
District Attorney
Gray County Courthouse
Pampa, Texas 79057
　　　　　Re: ROBERT F. TURNER
Dear Mr. Hardin:
　This office has been advised that the above named subject has requested a speedy trial in your county.
　We would therefore, respectfully suggest that you take some action in this matter at your earliest opportunity. We would also suggest that you consider the holdings of *Smith v. Hooey,* 393 U.S. 374, 89 S.Ct. 575 [21 L.Ed.2d 607] (1969); *Kane v. Virginia,* 419 F.2d 369 [1369] (4th Cir.1970), and *Dickey v. Florida,* 398 U.S., p. 30 [90 S.Ct. 1564, 26 L.Ed.2d 26], 1970, which make federal habeas corpus (28 U.S.C. § 2254) proceedings available to a convict in order to bar prosecution evident by detainers lodged against the convict when the proof shows (1) that the prisoner demanded a speedy trial and (2) that the State nevertheless failed to make a diligent effort to obtain him for trial. The Supreme Court of the United States in *Strunk v. United States* [412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56], 13 Cr.L. 3139 (June 11, 1973), held that a violation of the Sixth Amendment right to a speedy trial requires *reversal* of the conviction and *dismissal* of the indictment.
　In this connection, I am taking the liberty of sending you a copy of a memorandum from the United States Department of Justice, Bureau of Prisons, which sets forth the conditions governing the production of a United States prisoner upon a writ of habeas corpus issuing out of a state court.

October 26, 1973: A letter to the District Attorney from an administrative assistant at the United States Penitentiary at Leavenworth, Kansas, inquiring on behalf of appellant whether any action had been taken on his request for a speedy trial.

September 23, 1974: Counsel was appointed for appellant.

September 23, 1974: Application for writ of habeas corpus ad prosequendum filed by District Attorney.

September 30, 1974: Application for writ of habeas corpus ad prosequendum filed by District Attorney.

October 10, 1974: Application for writ of habeas corpus ad prosequendum filed by District Attorney.

October 30, 1974: Application for writ of habeas corpus ad prosequendum filed by District Attorney.

October 30, 1974: Writ of habeas corpus ad prosequendum issued to the warden of the federal penitentiary in Springfield, Missouri.

November 12, 1974: A letter from appellant to Gray County District Clerk contained a copy of a "Motion for Writ of Prohibition" purportedly filed in the United States District Court for the Western District of Texas. The motion requested that the federal court prohibit the effectuation of a writ of habeas corpus ad prosequendum to move appellant from the U. S. Medical Center for Federal Prisoners, Springfield, Missouri, to Gray County, Texas, for trial. Appellant contended that his right to speedy trial had been violated and that he could no longer be brought to trial on the pending charges.

November 18, 1974: Appellant's pretrial motion to quash the indictment filed by his appointed counsel heard and overruled.

November 20, 1974: Trial on the merits.

If I can be of any assistance to your office in effecting the return of this subject to Texas to stand trial, please let me know. I would appre-

The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution as applied through the Fourteenth Amendment. *Klopfer v. North Carolina,* 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967); *Smith v. Hooey,* 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969); *Dickey v. Florida,* 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970); *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The same right is assured by Article I, Section 10 of the Texas Constitution and Article 1.05, V.A.C.C.P.

The determination of whether an accused has been denied the right to a speedy trial is to be made by use of a "balancing test" which was set out in *Barker v. Wingo,* supra. In each individual case the Court requires consideration of the following factors although they are not exclusive: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) the prejudice to the defendant resulting from the delay. See also *Moore v. Arizona,* 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973); *Wilkerson v. State,* 510 S.W.2d 589 (Tex.Cr.App.1974); *McKinney v. State,* 491 S.W.2d 404 (Tex.Cr.App. 1973). We will consider each of these criteria as applied to the case at bar.

*LENGTH OF DELAY*

The length of delay, much the same as the other criteria, is to be considered on a case by case basis. There is no precise length of delay which would irrefutably constitute a violation of the right to a speedy trial in all cases. In *Barker v. Wingo,* supra, it was said that:

"The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiring into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily de-

ciate very much your keeping me advised of whatever action you decide to take."

pendent upon the particular circumstances of the case." [2]

■■ In determining whether the right to speedy trial has been denied, the length of delay is measured from the time the defendant is formally accused or arrested. *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *Dillingham v. United States,* 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975). In this case appellant was incarcerated in a federal penitentiary at the time he was indicted on August 14, 1972; thereafter, on August 15, 1972, a detainer was placed upon appellant by this State. The time between the return of the indictment and the trial was some two years and three months. Such a delay is not, per se, a deprivation of the appellant's right to a speedy trial, but is certainly a fact requiring further consideration of appellant's claim. *Barker v. Wingo,* supra; and see *McCarty v. State,* 498 S.W.2d 212 (Tex.Cr.App.1973); *Harris v. State,* 489 S.W.2d 303 (Tex.Cr.App.1973); *McKinney v. State,* supra.

*REASON FOR THE DELAY*

It has been said that in considering the reason for delay different weight should be assigned to different reasons.

"A deliberate attempt to delay the trial in order to hamper the defensive should be weighted heavily against the government [footnote omitted]. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay." *Barker v. Wingo,* supra, 92 S.Ct. at 2192.

And see *Strunk v. United States,* 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973).

The reason for the delay in this case is not well developed in this record. The appellant was incarcerated by federal authorities during the entire period of delay. The State has asserted that the delay was due in part to the fact that appellant was moved from one institution to another, that "on several occasions when the State's Application for Writ of Habeas Corpus Ad Prosequendum arrived at the federal institution, the defendant had been transferred to another federal institution and it was necessary for the State to file a new writ." While this may have been the case, we note that the record reflects the State did not file its first application for a writ until two years and one month after appellant had been indicted. At the hearing on appellant's pretrial motion to quash the indictment, the prosecutor admitted that after the appellant initially requested a speedy trial a lengthy period of time had elapsed during which the State made no effort to return appellant for trial; he did, however, assert that some delay was attributable to various motions appellant had allegedly filed in an attempt to resist a return to this jurisdiction. In the record before us, the only indication we find that appellant resisted this State's attempts to bring him to trial is the "Motion for Writ of Prohibition" filed in a Federal District Court some two weeks prior to the trial of this case and some two years and three months after he was indicted.

■ The State has failed to supply a reason which would excuse the delay in bringing the appellant to trial. *In Dickey v. Florida,* supra, it was said the "[t]he State suggests no tenable reason for deferring the trial in the face of petitioner's diligent and repeated efforts by motions in the state court . . . to secure a prompt trial." 90 S.Ct. 1564, at 1568. It can therefore be seen that the burden of excusing the delay rests with the State and that in light of a silent record or one con-

2. As an example of how the circumstances of each case can play a part in the inquiry into the length of delay, the Court stated that "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Barker v. Wingo,* supra, 92 S.Ct. at 2192. In the case at bar appellant was indicted and convicted for the offense of theft.

taining reasons insufficient to excuse the delay, it must be presumed that no valid reason for delay existed.

### APPELLANT'S ASSERTION OF HIS RIGHTS

"The defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult to prove that he was denied a speedy trial." *Barker v. Wingo,* supra, 92 S.Ct. at 2192–2193.

■ Appellant first moved the Gray County authorities to grant him a speedy trial in December, 1972, some four months after he had been indicted. Thereafter, appellant continued to make known his desire for a speedy trial, both through his own correspondence and through efforts of others such as the Attorney General of Texas and an administrative assistant at the institution in which appellant was confined. Suffice it to say that appellant asserted his right to a speedy trial early in the period of delay and asserted it on subsequent occasions.

### PREJUDICE TO THE APPELLANT

■ It is generally said that there are three interests to be considered in determining prejudice to the defendant; these interests are: (1) prevention of oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired. *Barker v. Wingo,* supra; *United States v. Ewell,* 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627; *Smith v. Hooey,* supra; *Klopfer v. North Carolina,* supra; *Harris v. State,* supra; *McKinney v. State,* supra. Appellant has made no serious contention that his ability to present a defense was prejudiced by the delay between indictment and trial.

In *McCarty v. State,* supra, we stated the following:

"During almost the entire time in question, the appellant was in custody under convictions in other jurisdictions. Under these circumstances we are therefore mainly concerned with whether or not appellant's ability to defend himself was prejudiced by the delay. *Harris v. State,* supra." 498 S.W.2d 212, at 218.

■ Upon re-examination we conclude that when an accused is incarcerated in other jurisdictions, prejudice wholly apart from impairment of the presentation of a defense may be shown to flow from a delay in according the accused his right to a speedy trial. *In Smith v. Hooey,* supra, it was said that:

"At first blush it might appear that a man already in prison under a lawful sentence is hardly in a position to suffer from 'undue and oppressive incarceration prior to trial.' But the fact is that delay in bringing such a person to trial on a pending charge may ultimately result in as much oppression as is suffered by one who is jailed without bail upon an untried charge. First, the possibility that the defendant already in prison might receive a sentence at least partially concurrent with the one he is serving may be forever lost if trial of the pending charge is postponed. Secondly, under procedures now widely practiced, the duration of his present imprisonment may be increased, and the conditions under which he must serve his sentence greatly worsened, by the pendency of another criminal charge outstanding against him.

"And while it might be argued that a person already in prison would be less likely than others to be affected by 'anxiety and concern accompanying public accusation,' there is reason to believe that an outstanding untried charge (of which even a convict may, of course, be innocent) can have fully as depressive an effect upon a prisoner as upon a person who is at large." 89 S.Ct. 575, at 577.

See also *Strunk v. United States,* supra; *Moore v. Arizona,* supra; *McCarty v. Heard,* 381 F.Supp. 1290 (D.C.Tex.1974).

In the case before us the sentence recites that the "judgment and sentence shall begin to run from and after the 14th day of

November, 1974, the date the Defendant was placed in jail in this Cause."

Since appellant was indicted in August, 1972, it can be seen that he was deprived of the possibility of receiving a sentence at least partially concurrent with his federal sentence while more than two years of that sentence passed by. Additionally, the detainer that was placed on him by the authorities of this State may well have prejudiced his opportunity for clemency, pardon, parole or to be a trusty.

 None of the four factors discussed above [length of delay, reason for delay, defendant's assertion of his right, and prejudice to the defendant] are regarded as either a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial. *Barker v. Wingo,* supra; *Moore v. Arizona,* supra. Rather, they are related factors to be considered together in a "difficult and sensitive balancing process."

 In the case at bar we find the following:

(1) There was a delay of more than two years between indictment and trial;

(2) Appellant asserted his right to a speedy trial early and persistently;

(3) Appellant was prejudiced as a result of the delay; and

(4) The State offered no tenable reason for the delay. We therefore conclude that appellant was deprived of his right to a speedy trial. As was stated in *Strunk v. United States,* supra, "In light of the policies which underlie the right to a speedy trial, dismissal must remain, as *Barker* noted, 'the only possible remedy.'" 93 S.Ct. 2260, at 2263.

The judgment is reversed and the prosecution ordered dismissed.

Opinion approved by the Court.

DOUGLAS, Judge (dissenting).

The State's motion for rehearing has been overruled without written opinion.

In the opinion on original submission the judgment was reversed on the ground that appellant was denied the right to a speedy trial. The State's contention is that there is no showing that appellant was prejudiced by the delay. The prior opinion should be withdrawn and the judgment should be affirmed.

The original opinion concluded that appellant was deprived of the possibility of receiving a sentence at least partially concurrent with his federal sentence while more than two years of that sentence passed by. That conclusion was in error.

The original opinion in this cause should be reconsidered in light of our holding in *Ex parte Jasper and Broussard,* 538 S.W.2d 782 (Tex.Cr.App.1976). That case involved a post conviction habeas corpus proceeding wherein petitioners alleged that the State refused to comply with a plea bargaining agreement. Both petitioners had entered guilty pleas to three indictments charging them with robbery by firearms, as co-defendants, and were each assessed three fifteen year concurrent prison sentences on September 9, 1974. Both petitioners were promised credit for time spent in jail in Louisiana toward the discharge of their Texas sentences as a part of the plea bargaining negotiations. We held that petitioners were entitled to such credit as a matter of due process of law.

We further held that petitioners were entitled to this jail time credit under the mandatory provisions of Article 42.03, Section 2, V.A.C.C.P., effective August 27, 1973. That section reads as follows:

"Sec. 2. In all criminal cases the judge of the court in which the defendant was convicted shall give the defendant credit on his sentence for the time that the defendant has spent in jail in said cause, from the time of his arrest and confinement until his sentence by the trial court."

The State of Texas placed a detainer on petitioners for the robbery cases on March 19, 1970, which was prior to their convictions and commitments to the Louisiana State Penitentiary. We held that:

"Once the Texas detainer was filed against the petitioners in Louisiana, the petitioners were in 'constructive custody' of the State of Texas and therefore, since the petitioners were sentenced after the effective date of the amendment of Article 42.03, supra, the petitioners are entitled to flat time credit for the time spent in custody, even in the State of Louisiana, from March 19, 1970, until the present date."

Likewise, we held in *Ex parte Jasper and Broussard* that petitioners were entitled to consideration for "good time" credits, as a matter of law, under the authority of Article 42.03, Section 4, V.A.C.C.P., as amended on August 27, 1973. That section reads as follows:

"Sec. 4. When a defendant who has been sentenced to imprisonment in the Department of Corrections has spent time in jail pending trial and sentence or pending appeal, the judge of the sentencing court shall direct the sheriff to attach to the commitment papers a statement assessing the defendant's conduct while in jail. On the basis of the statement, the Department of Corrections shall grant the defendant such credit for good behavior for the time spent in jail as he would have earned had he been in the custody of the department."

In the instant case, Article 42.03, supra, as amended, is applicable because appellant was tried on November 20, 1974, and sentenced on November 21. Thus, as a matter of law, his Texas sentence ran concurrently, in part, with his federal sentence. He is entitled to flat time credit toward the discharge of his Texas sentence from the time the detainer was placed on him, August 15, 1972, to the time that he was sentenced. He is also entitled to consideration for "good time" credits which may be awarded pursuant to the rules and regulations of the administration of the Texas Department of Corrections. The record before this Court does not reflect whether appellant maintained a good conduct record while in the federal penitentiaries (during the period of delay appellant was apparently transferred from one federal institution to another). The Texas Department of Corrections' officials could ascertain from the officials of those institutions whatever is required to determine appellant's conduct record. The Texas officials could then make the appropriate decisions in awarding appellant with good conduct credit, if any, based upon the records from the federal penitentiaries.

In view of the foregoing, there is no indication in the record that appellant was harmed in any manner by the trial delay. While the original opinion concluded that the detainer placed on him by the authorities of this State may have prejudiced his opportunity for clemency, pardon, parole, or trusteeship in federal prison, that conclusion had no support in the record and was, thus, merely speculative. There was no showing of just how many convictions in federal courts appellant had.

He did not subpoena a witness. He does not claim that he lost a witness or that his defense was hampered in any way.

On balance, then, the lack of harm suffered by appellant outweighs the trial delay.

The State's motion for rehearing should be granted, and the judgment should be affirmed.