**In the Matter of J.W.G.**

**No. 01–97–01284–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 18, 1999.

David Bosserman, Angleton, for appellant.

Lloyd Stansberry, Alvin, for appellee.

Panel consists of Justices WILSON, TAFT, and NUCHIA.

## OPINION

TAFT, Justice.

The State of Texas appeals the trial court's dismissal, for lack of speedy trial, of the State's two-count petition requesting determinate sentencing of appellee, J.W.G., in juvenile proceedings. We conduct a de novo review, utilizing the four factors from *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). We reverse.

### Procedural Background

On July 18, 1996, J.W.G. received probation in Cause No. 5209G for indecent exposure to a four-year-old boy (the boy). On July 6, 1996, J.W.G. allegedly committed an aggravated sexual assault on an eight-year-old girl (the girl).[1] The girl's mother did not report this assault to the police, however, until July 25, 1996, approximately a week after J.W.G. received the probated sentence in Cause No. 5209G for the offense against the boy.

J.W.G. was detained for the July 6, 1996 offense on September 20, 1996, but was released on September 23, 1996, because the girl had not yet provided a statement. On October 23, 1996, the district attorney received a videotape and the sworn statement of the girl regarding the July 6, 1996 offense. Also on October 23, 1996, the girl reported

an aggravated sexual assault by J.W.G., six days before, on October 17, 1996.[2]

On February 7, 1997, the State filed a petition in Cause No. 5788G, which alleged delinquent conduct and sought non-determinate disposition (commitment to the Texas Youth Commission) for the July 6, 1996 offense. On May 1, 1997, the State filed a similar petition in Cause No. 5968G, for the October 17, 1996 offense. A pretrial hearing was set in Cause No. 5788G for May 8, 1997, with trial scheduled for July 24, 1997.

On July 3, 1997, the State filed notice of intent to introduce extraneous offenses in Cause No. 5788G. The first of these was the adjudicated offense of indecent exposure to the boy. There were also new allegations that J.W.G. had sexually assaulted the girl in a series of incidents that began in January 1996 and continued through May 1996. On July 11, 1997, the petition in Cause No. 5788G was amended to include a new allegation of a January 15, 1996 aggravated sexual assault committed against the girl.[3]

On July 21, 1997, the district attorney's office advised J.W.G.'s counsel that Cause No. 5788G, which alleged the January 15, 1996 and July 6, 1996 offenses would be dismissed, and determinate sentencing sought, unless J.W.G. agreed to accept the recommendation of confinement in the Texas Youth Commission (T.Y.C.). J.W.G. would not agree. On July 21, 1997, the trial court dismissed Cause No. 5788G on the State's recommendation over J.W.G.'s objection. Cause No. 5968G, which alleged the October 17, 1996 offense, was dismissed on July 24, 1997, on the same recommendation by the State.

On August 13, 1997, the grand jury approved a petition for determinate sentencing in this cause, No. 6133G, based on two counts of aggravated sexual assault against the same girl. The first count described the January 15, 1996 offense. The second count

---

1. This *alleged* offense will be referred to as "the July 6, 1996 offense" or "the July 6, 1996 aggravated sexual assault."

2. This *alleged* offense will be referred to as "the October 17, 1996 offense" or "the October 17, 1996 aggravated sexual assault."

3. This *alleged* offense will be referred to as "the January 15, 1996 offense" or "the January 15, 1996 aggravated sexual assault."

described the July 6, 1996 offense.[4] Also on August 13, 1997, the trial court ordered a diagnostic study, social evaluation, and investigation, in compliance with section 54.02(d) of the Texas Family Code. TEX.FAM.CODE ANN. § 54.02(d) (Vernon 1996). Appointments with the professionals appointed to evaluate J.W.G. were canceled, however, when he refused to submit to examination.

On August 21, 1997, J.W.G. moved to dismiss this cause, No. 6133G, on grounds, among others, that the State had violated his rights to a speedy trial. J.W.G. complained he was arrested on September 20, 1996 for an offense alleged to have occurred on July 6, 1996 (the second count), but was not presented for grand jury approval until August 13, 1997. The motion made no claim whatsoever relating to the January 15, 1996 offense (the first count). On October 15, 1997, the trial court signed an order granting the motion, which resulted in dismissal, with prejudice, of both counts of aggravated sexual assault. In addition, the trial court signed findings of fact and conclusions of law in support of the ruling.

### Denial of Speedy Trial

The State brings two points of error challenging the trial court's order granting dismissal under the Sixth and Fourteenth amendments of the United States Constitution and under Article I, section 10 of the Texas Constitution. We address these points of error together.

### A. Standard of Review: *Barker v. Wingo* Applied De Novo

■ The Sixth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, guarantees the right to a speedy trial. U.S. Const. amend. VI; *Barker*, 407 U.S. at 515, 92 S.Ct. at 2184; *Klopfer v. North Carolina*, 386 U.S. 213, 223, 87 S.Ct. 988, 993, 18 L.Ed.2d 1 (1967). The Texas Constitution also guarantees the accused the right to a speedy public trial in all criminal prosecutions. TEX. CONST. art. I, § 10; *Ostoja v. State*, 631 S.W.2d 165, 167 (Tex.Crim.App.

1982); *Coleman v. State*, 760 S.W.2d 356, 357–58 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd). Although the Texas and federal constitutional rights to a speedy trial are separate and distinct, interpretation and application of this Sixth Amendment right by the federal courts has guided Texas courts in interpreting the right to speedy trial under the Texas Constitution. *Chapman v. Evans*, 744 S.W.2d 133, 135 (Tex.Crim.App.1988).

■ In *Barker*, the United States Supreme Court adopted a four-part balancing test to determine whether an accused has been denied the right to a speedy trial under the Sixth Amendment. The factors to be considered in each case are: (1) the length of delay; (2) the reason for the delay; (3) the assertion of the right to speedy trial by the accused; and (4) the prejudice to the accused resulting from the delay. *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192; *Johnson v. State*, 954 S.W.2d 770, 771 (Tex.Crim.App.1997); *Halbert v. State*, 881 S.W.2d 121, 127 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). The *Barker* factors are applied on an ad hoc basis as a balancing test to weigh the conduct of the prosecution and the defendant. *Barker*, 407 U.S. at 530, 533, 92 S.Ct. at 2192, 2193; *see Johnson*, 954 S.W.2d at 773.

■ Review of the *Barker* factors necessarily demands that we review the trial court's factual determinations and legal conclusions. Under well-settled standards, questions of law are reviewed de novo, while factual determinations by the trial court are reviewed deferentially. *See Villarreal v. State*, 935 S.W.2d 134, 145 (Tex.Crim.App. 1996) (Keller, J., concurring). But the outcome of the balancing test as a whole is a purely legal question that we properly review de novo on appeal. *Johnson*, 954 S.W.2d at 771. *Johnson* establishes that our review is de novo and not the abuse of discretion standard that J.W.G. maintains is appropriate. *Id.*

### B. First Count—January 15, 1996 Aggravated Sexual Assault

■ At the outset, we find clear error in the trial court's dismissal of the first count of

---

4. The petition did not address the October 17, 1996 offense involving the same victim, on which

the previously dismissed Cause No. 5968G had been based.

the petition for determinate sentencing. This count describes the alleged January 15, 1996 offense.

J.W.G.'s motion to dismiss is premised on alleged delay in bringing the July 6, 1996 offense to trial. The motion did not address the count describing the January 15, 1996 offense. Accordingly, there was never a request to dismiss that count, nor any assertion of the right to speedy trial on that count, as required by the third *Barker* factor, nor any showing of delay and resulting prejudice, under the first and fourth *Barker* factors. Furthermore, the trial court's findings of fact and conclusions of law, while they acknowledge the January 15, 1996 offense, focus only on the July 6, 1996 offense.

We conclude the trial court erred in dismissing the first count of the petition for determinate sentencing, in which the State alleged the January 15, 1996 offense.

### C. Second Count—July 6, 1996 Aggravated Sexual Assault

#### 1. Length of Delay

■■■ The record shows that the State was aware of the July 6, 1996 offense on July 25, 1996, and discussed it with J.W.G.'s attorney shortly thereafter.[5] J.W.G. was not detained for the July 6, 1996 offense, however, until September 20, 1996. Because his right to speedy trial did not arise until J.W.G. was detained, *Kuri*, 846 S.W.2d at 463, we will consider September 20, 1996 the beginning date for determining delay in proceeding to trial for the July 6, 1996 offense. With the October 15, 1997 dismissal as the ending date, this leaves a time period of just over one year. We find no evidence to support the trial court's finding of an "uncommonly long" delay under the record of this case. This duration was nevertheless sufficiently long to trigger full *Barker* analysis under the three remaining elements. *Doggett v. Unit-*

*ed States*, 505 U.S. 647, 651–52, 112 S.Ct. 2686, 2690–91, 120 L.Ed.2d 520 (1992); *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192; *Knox v. State*, 934 S.W.2d 678, 681 (Tex.Crim.App. 1996).

#### 2. Reason for Delay

■■■ The record reveals a number of reasons for the State's delay in bringing J.W.G. to trial for the July 6, 1996 offense. Although the mother's July 25, 1996 report alerted the State to the offense, it is undisputed that the girl's statement and videotape were not provided to the district attorney until October 23, 1996, the same day that the girl reported that J.W.G. had assaulted her just a few days before, on October 17, 1996. Delay in obtaining the girl's statement is not attributable to the prosecution under the record before us, and should be weighed less heavily in the balancing. *Deeb v. State*, 815 S.W.2d 692, 706 (Tex.Crim.App.1991).

Additional delay arose because of emerging further allegations of aggravated sexual assaults against the girl. Just before the July 24, 1997 trial date, the State amended the petition in Cause No. 5788G to allege an aggravated sexual assault on the girl, on January 15, 1996. When J.W.G. turned down the State's offer of T.Y.C. time, the State determined to forego the July 24, 1997 trial settings in the cases seeking referral to the T.Y.C. in order to pursue determinate sentencing. The record does not suggest, however, that the State pursued a strategy of deliberate delay. Nor does the record suggest prosecutorial vindictiveness in deciding to pursue determinate sentencing. An additional, neutral factor of delay is the time spent in obtaining the grand jury's true bill for determinate sentencing.

■■■ The State has a duty to prevent unreasonable delay, and deliberate attempts to hamper the defense weigh heavily against

---

5. The record does not support, however, the court's finding No. 11, which states that the State was "apparently" aware of allegations of a July 6, 1996 assault before July 18, 1996, when J.W.G. was adjudicated a delinquent and placed on probation. In our view, the court's statements in finding 11 are speculative on their face because they equivocate among possible alternatives. Because finding 11 consists only of listing possibilities, it does not "find" facts. As in *State v. Kuri*, 846 S.W.2d 459, 464 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd), which rejected a trial court's conclusion of law as more in the nature of personal opinion, we reject, as fact finding, the trial court's speculations and equivocations about the State's pre-July 18, 1996 awareness of the July 6, 1996 assault.

the State. *Jackson v. State*, 873 S.W.2d 110, 111–12 (Tex.App.—Tyler 1994, no pet.). Yet, nothing in the record supports the trial court's conclusion that the State was intentionally inattentive to the prosecution of J.W.G. Similarly, while the trial court also concluded that the State's inattention was negligent, we conclude there is no evidence that, on balance, weighs sufficiently heavily against the State to warrant a finding of unreasonable delay.

### 3. Assertion of the Right

 The trial court's findings conflict with respect to assertion of the right to speedy trial. Finding 66 recites that J.W.G. first "urged the speedy trial issue" at the October 15, 1997 hearing on his motion to dismiss, while Finding 62 recites that the right to speedy trial was asserted "at all relevant times." Finally, Finding 54 recites that the motion to dismiss was filed on August 21, 1997. None of these is correct.

 J.W.G. never requested a *speedy* trial, although he did request *dismissal* for purported violations of his right to speedy trial. These requests are not the same. *See Phillips v. State*, 650 S.W.2d 396, 401 (Tex. Crim.App. [Panel Op.] 1983); *Halbert v. State*, 881 S.W.2d at 127; *Kuri*, 846 S.W.2d at 465. Just as a motion to dismiss does not assert speedy-trial rights, a statement that one is "ready" for trial does not assert speedy-trial rights.

 We conclude that J.W.G. never requested a speedy trial, a consideration that weighs heavily against him on balance. A defendant's failure to assert the right and to demonstrate prejudice resulting from the delay weigh heavily against a claim of denial of speedy trial. *Jackson*, 873 S.W.2d at 112–13.

### 4. Prejudice

 Three interests determine prejudice to the accused under the *Barker* test: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern; (3) to limit possibilities that the defense will be impaired. *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193. J.W.G. need not establish actual prejudice; "some showing" of prejudice resulting from delay will suffice. *Phil-*

*lips*, 650 S.W.2d at 402–03; *Kuri*, 846 S.W.2d at 466.

J.W.G. was detained only three days, from September 20 to September 23, 1996, and there is no showing whatsoever that the detention was oppressive. With respect to anxiety and concern, the record supports the court's findings that appellant suffered depression, a suicide attempt, for which he was not hospitalized, and a lost job at a fast-food restaurant. In addition, J.W.G. was required to attend counseling, missed a lot of school and had a drop in his grades. Concerning the last and most important interest, however, impairment of the defense, J.W.G.'s motion claimed that crucial evidence had become unavailable, but neither the record nor the trial court's findings substantiate that concern.

We conclude appellant showed some prejudice, though not of the degree that prejudiced his defense.

### 5. Balancing

 As noted above, no single factor of the four *Barker* considerations is dispositive because all four must be weighed against the others in determining whether J.W.G. was denied his rights to a speedy trial. *Barker*, 407 U.S. at 533, 92 S.Ct. at 2193. After our de novo application of the balancing process required by *Barker*, we conclude there was no unreasonable delay in the State's prosecution of J.W.G. We further conclude that he failed to request a speedy trial and that the record does not show sufficient prejudice to J.W.G. to warrant speedy-trial concerns. These factors, considered together on balance, compel the conclusion that there was no violation of J.W.G.'s rights to speedy trial under the United States and Texas constitutions in the State's prosecution of J.W.G for the July 6, 1996 offense. Accordingly, we hold that the trial court erred in its application of the *Barker* factors by dismissing the second count of the petition for determinate sentencing.

We sustain the State's first and second points of error.

Because of our disposition of the State's first and second points of error, we do not

address the third and fourth points of error, in which the State complains of the admission of evidence at the hearing on the motion to dismiss.

## Conclusion

We reverse the judgment of dismissal and remand this cause to the trial court for further proceedings.

