Opinion issued October 14, 2004




     






In The
Court of Appeals
For The
First District of Texas




NO. 01-02-01329-CR




ROBERT E. MASSEY, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 12th District Court
Walker County, Texas
Trial Court Cause No. 20,501




MEMORANDUM OPINION

          Appellant, Robert E. Massey, pleaded guilty to the offense of aggravated
robbery and true to an allegation in an enhancement paragraph that he had a prior
felony conviction for possession of a controlled substance. The trial court sentenced
him to thirty years’ confinement. In his sole point of error, Massey contends he was
denied a speedy trial. We conclude that the State did not violate Massey’s right to a
speedy trial and therefore affirm.
Facts
          A trial court convicted Massey in April 1994 of felony possession of a
controlled substance, and sentenced him to nine years’ confinement. Authorities
released him on parole in December 1998.


 Massey subsequently was arrested for
aggravated robbery in May 1999, and indicted on October 26, 1999. The Texas
Department of Criminal Justice (“TDCJ”) revoked Massey’s parole for his 1994
conviction because of the pending charges. In July 1999, authorities then returned
Massey to the custody of the TDCJ.


 The State served Massey with the indictment
for the aggravated robbery and escape offenses in November 1999, and Massey
received notice that same month that the State placed a detainer on him. TDCJ
discharged Massey in December 2001, and released him pursuant to the detainer into
the physical custody of Walker County officials, who transported him to the county
jail to prosecute him for the pending charges. In March 2002, Massey filed a motion
to dismiss the indictment, contending that the State had failed to afford him a speedy
trial.
Right to a Speedy Trial
          The right to a speedy trial is guaranteed by the Sixth Amendment of the United
States Constitution and applies to the states through the Fourteenth Amendment. 
Barker v. Wingo, 407 U.S. 514, 515, 92 S. Ct. 2182, 2184 (1972). An accused is also
guaranteed the right to a speedy trial by the Texas Constitution. Tex. Const. art. I,
§ 10; see also Tex. Code Crim. Proc. Ann. art. 1.05 (Vernon Supp. 2004)
(providing that an accused is guaranteed a speedy trial). Texas courts look to the
federal courts to determine constitutional rights and apply the test articulated in
Barker for a speedy-trial analysis. Harris v. State, 827 S.W.2d 949, 956 (Tex. Crim.
App. 1992). The Barker test requires a reviewing court to balance four factors to
determine whether one’s right to a speedy trial has been violated: (1) the length of
delay; (2) the reason for the delay; (3) defendant’s timely assertion of his speedy-trial
right; and (4) prejudice to the defendant resulting from the delay. Barker, 407 U.S.
at 530, 92 S. Ct. at 2192. As the reviewing court, in evaluating a speedy trial claim,
we review factual issues for abuse of discretion, and legal issues de novo. State v.
Munoz, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999).
 

Length of Delay
          The length of the delay is considered a “triggering mechanism”—absent a
presumptively prejudicial delay, a reviewing court need not consider the other Barker
factors. Barker, 407 U.S. at 530, 92 S. Ct. at 2192. Relying on Turner v. State, 545
S.W.2d 133, 137 (Tex. Crim. App. 1977), Massey contends that the twenty-eight 
month delay between the date he was indicted and his trial is presumptively
unreasonable. The Court of Criminal Appeals has recognized that courts generally
hold delays of eight months or longer presumptively unreasonable, thereby triggering
speedy-trial analysis. Harris v. State, 827 S.W.2d 949, 956 (Tex. Crim. App. 1992). 
Likewise, this Court recently held that a delay substantially shorter than twenty-eight
months is presumptively unreasonable, thus triggering speedy-trial analysis. Ervin
v. State, 125 S.W.3d 542, 546 (Tex. App.—Houston [1st Dist.] 2002, no pet.). We
therefore evaluate Massey’s claim under Barker.
Reason for Delay
          The State bears the burden to justify a presumptively unreasonable delay. 
Phillips v. State, 650 S.W.2d 396, 400 (Tex. Crim. App. 1983). A deliberate attempt
to delay the trial to hamper the defense weighs heavily against the government. 
Barker, 407 U.S. at 531, 92 S. Ct. at 2192. A negligent delay weighs less heavily,
but nevertheless we consider it, because the ultimate responsibility for such
circumstances rests with the State rather than with the defendant. Id.
          Massey does not dispute that the State announced it was ready for trial in
November 1999, only weeks after he was indicted, and that the State requested that
the trial court’s coordinator set the case for trial. Massey nonetheless contends that,
other than by blaming the trial court’s scheduling system, the State offered no reason
to justify the reason for the delay he experienced. Massey also alleged, in a letter to
the trial court just before the trial took place, that the State passed four trial settings,
and that he announced “ready” at each; but nothing else in the appellate record
indicates that such settings existed, or that Massey ever announced ready. 
          Massey called Leslie Hardy, an employee of the District Attorney’s Office,
who testified that Carroll Standley was the trial court’s coordinator.


 Hardy attributed
the delay in this case to a backlog of cases in the trial court, and explained that “in
order to try to keep up with [the] backlog,” a large amount of trial work is currently
handled by visiting judges. The Walker County District Attorney receives dockets
from the trial court coordinator, and its office prepares the cases set on the court’s
docket. Hardy testified that the district attorney’s office did nothing to delay bringing
Massey’s case to trial, and the trial court admitted into evidence a written
announcement of ready and request for trial setting filed by the State on November
22, 1999. 
          We find that this factor weighs against the State, but not heavily. In Barker,
although the Supreme Court considered overcrowded courts to be a neutral reason for
delay, it did state that it should be considered as “responsibility for such
circumstances must rest with the government rather than with the defendant.” Barker,
407 U.S. at 531, 92 S. Ct. at 2192; see also Ramirez v. State, 897 S.W.2d 428, 433
(Tex. App.—El Paso 1995, no pet.) (because record supported State’s contention that
delay caused by overcrowded docket, “this factor does not weigh heavily against the
State”).
Assertion of Speedy Trial Right
          A defendant’s assertion of his right to a speedy trial is entitled to strong
evidentiary weight. Barker, 407 U.S. at 531-32, 92 S. Ct. at 2193. Likewise, a
defendant’s failure to assert the right to a speedy trial makes it difficult to prove that
he was denied a speedy trial. Id. at 532, 92 S. Ct. at 2193; Shaw v. State, 117
S.W.3d 883, 890 (Tex. Crim. App. 2003); Dragoo v. State, 96 S.W.3d 308, 314 (Tex.
Crim. App. 2003).
          Without providing authority to support this proposition, Massey contends that,
by filing “a few [pretrial] motions,” he repeatedly, albeit impliedly, asserted his right
to a speedy trial. Massey testified that he did not recall what relief his pretrial
motions requested, nor how many motions he filed, and admitted that he never
requested a hearing on those motions. The record indicates that Massey filed two
pretrial motions on November 30, 1999. Massey explained that, although he had
access to free stamps to send “legal mail,” he sent only the motions contained in the
court’s file, explaining, “I was just waiting for them to respond.” Massey testified
that he wrote the district attorney, but was not surprised to know that the letter was
not in the district attorney’s file. When asked why he was not surprised, Massey
reluctantly responded, “I’d rather not answer that question.” 
          Existing caselaw contradicts Massey’s proposition that the filing of pretrial
motions implies a request for a speedy trial. See State v. Munoz, 991 S.W.2d 818,
825-26 (Tex. Crim. App. 1999) (waiver of arraignment form containing a pro forma
request for trial date and motion to sever not assertion of right to speedy trial when
nothing filed before motion to dismiss expressly reflected assertion of right to speedy
trial); In re J.W.G., 988 S.W.2d 318, 323 (Tex. App.—Houston [1st Dist.] 1999, no
pet.) (neither motion to dismiss for purported speedy trial violations nor
announcement of ready constitutes assertion of right to speedy trial); Harlan v. State
975 S.W.2d 387, 391 (Tex. App.—Tyler 1998, pet. ref’d) (distinguishing between
pursuing pretrial motions and asserting right to a speedy trial).


 
          The Court appointed trial counsel for Massey on December 14, 2001. On
December 31, 2002, Massey waived arraignment, and stated that he “ agrees that the
cause be set for pre-trial at the next available setting in the courtroom of the 12th
Judicial District Court of Walker County, Texas.” Massey, however, never expressly
asserted his right to a speedy trial until March 2, 2002, and did so at that time by
seeking dismissal of the indictment. 
          Massey’s reliance on Turner v. State, 545 S.W.2d 133 (Tex. Crim. App. 1976)
is misplaced. Unlike Massey, Turner persistently asserted his right to a speedy trial. 
Turner filed numerous motions for a speedy trial and requested that the trial court
quash the indictment. Id. at 135-36. He sent letters requesting a speedy trial, and
even successfully persuaded the Texas Attorney General and an administrative
assistant employed at the federal penitentiary at which he was housed to send letters
requesting that he receive a speedy trial. Id. Even before obtaining counsel, Turner
requested a speedy trial on two occasions, moved once to quash the indictment, and
enlisted the services of the attorney general in requesting that he receive a speedy
trial. Id. Unlike Turner’s diligent assertion of his right to a speedy trial, Massey
waited over two years from the date he was indicted before he asserted his right to a
speedy trial.
          Massey also relies upon Zamorano v. State, 84 S.W.3d 643, 651-52 (Tex. Crim.
App. 2002), in support of his contention that he was denied the right to a speedy trial. 
Like Massey, Zamorano’s first assertion of his right to a speedy trial was “tardy.”


 
Id. at 651. Unlike Massey, however, Zamorano persistently asserted his right to a
speedy trial. Zamorano filed a second motion for speedy trial less than two months
after the trial court denied his first motion. Id. at 651-52. The Court of Criminal
Appeals noted that, if it were not for Zamorano’s persistence as evidenced by his
second assertion of his right to a speedy trial, his initial “late assertion, had no
subsequent motion been filed, might well have undercut his Sixth Amendment
claim.” Id. at 652. Here, Massey first asserted his right to a speedy trial by filing his
motion to set aside the indictment on March 7, 2002. The trial court conducted a
hearing on the motion on March 22, 2002, and the trial court did not rule on his
motion until October 24, 2002. More than seven months elapsed between the date of
the hearing and the date that the trial court ruled on his motion, and, unlike
Zamorano, Massey did not again assert his right to a speedy trial, but instead plead
guilty to the criminal offense of aggravated robbery pursuant to a plea bargain on
November 4, 2002.
          We determine that this factor weighs heavily against Massey. Massey was
indicted in October 1999, and never filed a motion or request for speedy trial. In
March 2002, twenty-eight months after he was indicted, Massey first asserted his
right to a speedy trial by filing a motion to set aside the indictment. The absence of
a timely demand for a speedy trial, even after being represented by counsel, indicates
strongly that Massey really did not want a speedy trial. See Shaw, 117 S.W.3d at 890; 
Dragoo, 96 S.W.3d at 314(concluding appellant’s quiet acquiescence for three and
a half years indicated he really did not want a speedy trial); see also Zamorano, 84
S.W.3d at 651 n.40 (noting motion framed as motion to dismiss potentially weakens
speedy trial claim, because “it shows a desire to have no trial instead of a speedy
trial”);


 Harris, 827 S.W.2d at 957. While Massey had no duty to bring himself to
trial, he was not without responsibility to assert his right to a speedy trial. Zamorano,
84 S.W.3d at 651. 
Prejudice Caused by the Delay
          The defendant bears the burden to make a prima facie showing of prejudice. 
State v. Munoz, 991 S.W.2d 818, 826 (Tex. Crim. App. 1999). If shown, the State
must prove that “the accused suffered no serious prejudice beyond that which ensued
from the ordinary and inevitable delay.” Id. We assess prejudice “in the light of the
interests of defendants which the speedy trial right was designed to protect” in
determining prejudice caused by the delay. Barker, 407 U.S. at 532, 92 S. Ct. at
2193. The right to a speedy trial is designed to protect the following three interests
of a defendant: (1) prevention of oppressive pretrial incarceration; (2) minimization
of anxiety and concern of the accused; and (3) limiting the possibility of impairment
of the accused’s defense. Id. The last type of prejudice is the most serious, although
a defendant’s claim that his right to a speedy trial was violated does not absolutely
require that he demonstrate prejudice to his ability to present a defense. Zamorano
v. State, 84 S.W.3d 643, 652.
          Delay does not per se prejudice a defendant. See Barker, 407 U.S. at 519; 92
S. Ct. at 2186. For example, if a trial court experiences a backlog of cases on its
docket, a defendant is able to more effectively negotiate for a plea bargain and
otherwise manipulate the system. Id. Witnesses also become unavailable and
memories fade as time passes. Id. 407 U.S. at 521; 92 S. Ct. at 2187. Considering
that the State bears the burden of proof at trial, delay can be either employed or
acquiesced to as a defense tactic. Id. 407 U.S. at 522; 92 S. Ct. at 2187.
           Massey contends that he was prejudiced by the delay because: (1) “he, his
counsel and investigator are now unable to locate numerous witnesses to the events
that transpired the day of the alleged incident”; (2) he “cannot recall with accuracy,
after a period of almost four years, the specific times and places he was at during the
day of the alleged offense”; (3) “he was caused to suffer mental anguish and concern
as a result of the pending case”; and (4) “he could have run any time received for the
current offense concurrent with the time he was serving in TDCJ for the past three
years.” The State does not address Massey’s specific contentions, but instead
contends that “Massey caused his own delay in not asserting his right to a speedy
trial” and, because he acquiesced to the delay, he suffered no prejudice. We address
each of Massey’s contentions.
Witness Unavailability and Evidence Pertaining to the Offense
          Where the basis for prejudice is witness unavailability, a defendant must
demonstrate that: (1) the witness was unavailable at time of trial; (2) the witness’
testimony would have been relevant and material; and (3) the defendant exercised due
diligence in an attempt to locate the witnesses. Clarke v. State, 928 S.W.2d 709, 716
(Tex. App.—Fort Worth 1996, pet. ref’d). Massey testified that, while incarcerated,
he unsuccessfully attempted to contact witnesses that he thought would be favorable
to his defense by sending them letters. Massey explained, “there was this girl that I
was talking to. I wrote her, and my letter came back - - everybody I write [sic] - -
most of the people I wrote, they - - I never heard anything else from them.” Massey
testified that he knew how to address an envelope, and that he provided correct
addresses on the envelopes, but that all of his letters were returned, stamped
“insufficient address.” Massey also testified that he did not have “the opportunity to
discuss his case with any investigators,” and insinuated that had he that opportunity,
he may have been able to locate the unavailable witnesses. 
          On cross-examination, the prosecutor questioned Massey regarding the
existence of the unavailable witnesses. Massey testified that “[t]here was a Barbara,”
but was unable to recall her last name. The prosecutor then referenced the letters that
Massey contended he sent, and the following colloquy occurred:
[Massey]:I didn’t never say that I wrote no girl for no help.
 
[State]:Yes, [you] did; you said you wrote a letter to a potential
witness and some - - and it was a girl and you got it back
insufficient address.
 
[Massey]:No, no. Maybe you misunderstood me.
 
[State]:Maybe you can correct me. To whom did you send all
these letters to [sic]?
 
[Massey]:What do you want?
 
[State]:I want to know - - 
 
[Massey]:I’m not understanding - - 
 
[State]:The names of the witnesses you say you cannot find. 

Massey then explained that, in addition to attempting to locate Barbara, Massey also
attempted to locate a witness named Meosha Laymon. Massey did not, however,
offer any evidence demonstrating the subject matter of their testimony, or that it
would have been relevant and material to his defense. See Clarke, 928 S.W.2d at 716
(requiring defendant show witness testimony would have been relevant and material). 
Massey offered no evidence suggesting that he was unable to hire an investigator, and
the prosecutor elicited testimony from Massey suggesting that he was unaware
whether his attorney requested that the court appoint an investigator. On redirect
examination, Massey’s attorney did not attempt to controvert that testimony. We
conclude that Massey failed to demonstrate that the testimony of the unavailable
witnesses would have been relevant and material, and that he exercised due diligence
in an attempt to locate the potential witnesses.
          Closely related to Massey’s contention that he was prejudiced by the delay—
because of his inability to locate witnesses to the events that transpired the day of the
robbery—is his contention that he is unable to recall with accuracy his whereabouts
during the day of the robbery. In order to demonstrate prejudice caused by fading
memories, Barker requires that a defendant show that “lapses of memory” are in some
way “significant to the outcome” of the case. See Barker, 407 U.S. at 534, 92 S. Ct.
At 2194; see also State v. Munoz, 991 S.W.2d 818, 829 (Tex. Crim. App. 1999). 
Massey’s general contention on appeal that he “cannot recall with accuracy, after a
period of almost four years, the specific times and places he was at [sic] during the
day of the alleged offense” is insufficient to demonstrate that his defense was
prejudiced by his allegedly fading memories. See Munoz, 991 S.W.2d at 829. 
Moreover, Massey has not cited to any evidence in the record to support this
proposition; he merely raises the contention on appeal and has therefore waived this
argument. See Tex. R. App. P. 33.1. We have reviewed Massey’s testimony, and
note that Massey did not aver that the delay he experienced resulted in an inability to
recall his whereabouts on the day of the robbery.
          Massey experienced several minor lapses of memory while testifying, but those
memory lapses did not pertain to the specific times and places where he was on the
date of the robbery. Instead, Massey was unable to recall the “exact date” or “time
frame” that the court appointed his attorney, the name of the individual who served
him with the aggravated robbery and escape indictment, the exact date he received
treatment at TDCJ’s mental health facility, and the last name of “Barbara,” an
unavailable witness. Because Massey presented no evidence at the hearing in support
of his appellate contention that his memory lapses prohibited him from recalling with
accuracy his whereabouts during the day of the robbery, we hold that he has failed to
show that his “lapses of memory” were in some way “significant to the outcome” of
his case. Munoz, 991 S.W.2d at 829.
Mental Anguish
          Relying upon his testimony, which he asserts is corroborated by medical
evidence, Massey contends that the delay he experienced caused him to suffer mental
anguish and concern. Massey testified that he was “concerned” about the pending
escape and aggravated robbery charges. Massey explained,
[W]hen I caught the chain . . . I was trying to get back and I couldn’t get
in touch with nobody. I was stressing - - when I say ‘stressing,’ I mean
. . . I wasn’t hardly eating. I was having problems, because I know I had
this pending charge and I couldn’t get - - it was like I was stuck down
there. And no one was trying to get me back into court. They wouldn’t
hear me. I was doing what I was supposed to do. They just wasn’t
hearing me. 

Massey testified that his anxiety required that he receive treatment at Skyview,
TDCJ’s unit for psychiatric care. Massey testified that he informed his treating
physicians and counselors at Skyview that the pending charges were the source of his
anxiety and stress, that he was given Zoloft to treat his symptoms, and that he
continued to suffer mental anguish while in TDCJ’s custody. 
          On cross-examination, however, Massey admitted that he was treated at
Skyview before he was indicted for aggravated robbery and escape, and only one
month after returning to TDCJ’s custody. Massey’s only explanation for why he no
longer takes Zoloft was because he was transferred to another unit “where they don’t
give that.”
          The medical evidence reflects that, on August 3, 1999, Massey complained of
stress, of hearing voices, and of seeing things such as birds, the gates of hell, fire, and
skeletons. The attending nurses’ notes reflect, however, that, on August 3, 1999,
Massey stated, “I haven’t told the psych doctor the truth.” Massey’s records indicate
that he desired to “talk to him again so I can tell him the truth.” The treating
physician’s notes reflect that Massey was interviewed on August 5, 1999. During that
interview, he stated “that he has been having some depressive [sic] mood and for that
reason wishes to continue on medication as an outpatient.” According to his medical
records, Massey was initially placed on Prozac at seventeen or eighteen years of age,
and used Prozac in conjunction with various street drugs. Massey’s medical records
address TDCJ’s basis for proscribing antidepressant drugs to treat his depression:
He recently was placed in Walker County Jail where his Prozac was
continued because it had been restarted in the free world. He was
transferred to Skyview because at his unit of assignment he was
complaining of depressed mood and requesting that he be restarted on
medication. There are notes about him wanting to be on medication so
that he will not have to work in the field, but because of his prior psych
history and his presentation today, it appears that he does benefit from
being on antidepressant. 
          Although Massey testified that the delay he experienced caused him to suffer
mental anguish and concern over the pending charges, the medical evidence he
presents does not support this specific contention. Moreover, Massey ignores the
controverting evidence that he sought treatment for stress prior to being indicted for
escape and aggravated robbery, and that his medical records reflect that he was
untruthful to the healthcare providers at Skyview. His medical records also suggest
that he may have requested medical treatment in order to avoid working in the field,
and they disclose that Massey previously had experienced symptoms of depression,
and requested drugs to treat it. In such circumstances, we view the evidence in a light
favorable to the trial court’s ruling, and conclude that this evidence does not support
Massey’s speedy trial claim. 
Possibility of Concurrent Time
          Massey also contends that he was prejudiced because he was denied the
“chance” to serve portions of his aggravated robbery sentence concurrently with the
remainder of another sentence he served in TDCJ after he violated his parole. The
State does not directly respond to this argument, but instead contends that Massey’s
failure to assert his right to a speedy trial, combined with the fact that he entered a
plea of guilty pursuant to a plea bargain demonstrates that he suffered no prejudice.
          The State arrested Massey in May 1999, and returned him to TDCJ in July
1999 for a parole violation on a previous felony conviction, where he served the
remainder of that sentence. Massey was indicted in this case on October 26, 1999. 
Massey received notice that Walker County placed a detainer on him in November
1999. TDCJ discharged Massey in December 2001, and Walker County officials took
him into their custody to answer for the current charges pursuant to the detainer. 
Massey testified that he understood that if he were convicted and sentenced for the
charged offenses, he would receive credit for time served from the date the detainer
was launched. The trial court sentenced Massey to thirty years’ confinement pursuant
to a plea bargain, and Massey received 327 days of credit on that sentence. On
appeal, he has not challenged the amount of time the trial court credited towards the
satisfaction of his sentence.
          In Bailey v. State, 885 S.W.2d 193, 202 (Tex. App.—Dallas 1994, pet. ref’d),
the Court of Appeals considered and rejected Massey’s very argument under
circumstances almost identical to this case. Bailey was indicted in Dallas County in
July 1988. Id. at 201. In November 1991, Bailey was arrested in Harris County on
an unrelated charge, and Dallas County placed a detainer on Bailey the day after his
arrest. Id. Bailey was convicted and sentenced in Harris County in November 1991,
and completed the sentence in May 1992, whereupon the State transferred him to
Dallas County pursuant to the detainer. Id. On appeal, Bailey, like Massey,
contended that he was prejudiced by the loss of the opportunity to serve concurrent
sentences. The Court of Appeals rejected Bailey’s argument, concluding that he was
not prejudiced by the loss of concurrent sentences in the Dallas County conviction. 
Id. at 202. Here, Massey successfully negotiated for a plea bargain, and thus we
cannot assume that Massey was prejudiced by the loss of the “chance” to serve
concurrent sentences. See Barker, 407 U.S. at 519; 92 S. Ct. at 2186 (noting that
defendants in courts with overcrowded dockets may more effectively negotiate plea
bargains). Massey has not shown that had he been given a speedier trial, it would
have allowed him to serve sentences concurrently in any way that would have
benefitted him. 
          We conclude that Massey has not demonstrated that he was prejudiced by the
delay he experienced. He did not demonstrate that the testimony of the unavailable
witnesses was relevant and material, that he exercised due diligence in his attempt to
locate the missing witnesses, nor that his lapses in memory were significant to the
outcome of his case. Although Massey testified that the delay caused him to suffer
mental anguish, the trial court observed Massey and was able to evaluate the
credibility of his interested and controverted testimony concerning this contention. 
See Munoz, 991 S.W.2d at 821(reviewing court reviews factual issues in speedy trial
claim for abuse of discretion). Moreover, the medical evidence that Massey offered
controverts his own testimony, calls into question his credibility, and demonstrates
that he has previously received medication for the symptoms he contends evidences
his mental anguish. Finally, Massey agreed to the terms of his plea bargain, does not
contend that his plea was involuntary, and the trial court assessed punishment as
recommended.



Conclusion
          We conclude, based upon the factors established in Barker, that the State did
not violate Massey’s right to a speedy trial. Although the explanation for the delay
weighs slightly against the State, Massey failed to assert his right to a speedy trial,
and did not demonstrate that he was prejudiced by the delay. We therefore conclude
that the trial court properly denied Massey’s motion to dismiss the indictment, and
affirm the judgment of the trial court. 



                                                             Jane Bland
                                                             Justice

Panel consists of Justices Taft, Jennings, and Bland.

Do not publish. Tex. R. App. P. 47.2(b).