In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00049-CV
______________________________


JIMMY R. NEAL, Appellant
Â 
V.
Â 
WISCONSIN HARD CHROME, INC., d/b/a
TEXAS HARD CHROME, INC. AND/OR
TEXAS HARD CHROME, INC., Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 276th Judicial District Court
Morris County, Texas
Trial Court No. 20,677-A


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross
Dissenting Opinion by Justice Carter

O P I N I O N

Â Â Â Â Â Â Â Â Â Â Jimmy R. Neal appeals from a summary judgment taken against him in his personal
injury lawsuit against Wisconsin Hard Chrome, Inc., d/b/a Texas Hard Chrome, Inc. and/or
Texas Hard Chrome, Inc. (Chrome). He alleged that Chrome's negligence exposed him
to heavy metals, chemicals, and other toxic substances, while Chrome asserted that the
action was barred because Chrome was a subscriber under the Workers' Compensation
Act, and thus Neal's exclusive remedy was under the Act. Neal contends that Chrome was
not his employer and that Chrome was thus subject to tort liability for its negligence in
exposing Neal to deadly toxins.
Â Â Â Â Â Â Â Â Â Â In a summary judgment case, the issue on appeal is whether the movant met its
summary judgment burden by establishing that no genuine issue of material fact exists and
that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c);
Sw.Â Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002). 
Â Â Â Â Â Â Â Â Â Â The issue in this case is whether the summary judgment evidence establishes as
a matter of law that Neal was a joint or dual employee of Scot Industries and Chrome. The
evidence shows that in 1976 Scot Industries created a business entity identified as
Wisconsin Hard Chrome (which was also d/b/a Texas Hard Chrome, Inc.) and that Chrome
leased space inside the Scot Industries manufacturing facility and chrome plated items
made by Scot for sale. It is undisputed that both Scot Industries and Chrome were
subscribers under the Workers' Compensation Act.
Â Â Â Â Â Â Â Â Â Â The Act defines "employee" as "each person in the service of another under a
contract of hire, whether express or implied, or oral or written." Tex. Labor Code Ann.
Â§Â 401.012(a) (Vernon Supp. 2004â2005).
Â Â Â Â Â Â Â Â Â Â The summary judgment evidence shows:
Â Â Â Â Â Â Â Â Â Â âÂ Â Â Â Â Â Â Â Â Two possible employers are involved. Â Â Â 
Â 
Â Â Â Â Â Â Â Â Â Â âÂ Â Â Â Â Â Â Â Â Neal sought worker's compensation benefits through Scot Industries.
Â 
Â Â Â Â Â Â Â Â Â Â âÂ Â Â Â Â Â Â Â Â Chrome contracted for the hire of Neal through Scot Industriesâwhich paid
for his labor. 
Â 
Â Â Â Â Â Â Â Â Â Â âÂ Â Â Â Â Â Â Â Â Chrome did not directly pay the salary of any employee. 
Â 
Â Â Â Â Â Â Â Â Â Â âÂ Â Â Â Â Â Â Â Â In response to requests for admissions, Chrome admitted Neal has never
been an employee of Wisconsin Hard Chrome d/b/a Texas Hard Chrome or
of Scot Hone Corp.



Â 
Â Â Â Â Â Â Â Â Â Â The Texas Supreme Court recently addressed in Wingfoot Enterprises v. Alvarado
the concept of having more than one employer of an employee. Wingfoot Enters. v.
Alvarado, 111 S.W.3d 134, 139â40 (Tex. 2003). In that opinion, the court recognized the
exclusive remedy provision of the Act as providing that, where a worker is an employee of
one entity for some purposes, and of another entity for some purposes, neither the
statutory definition of "employer" or "employee" forecloses the possibility that there may
be more than one employer. This reasoning undoes a prior line of cases suggesting that,
because only one employer could exist, any others were necessarily third parties to the act
that caused the injury (and thus liable under common-law remedies). After Wingfoot, it is
clear that the dual-employment theory has prevailed and that the question of who actually
controlled the acts of the employee is not a factor of particular importanceâand that an
employee can indeed be the servant of two employers in a number of factual scenarios.
Â Â Â Â Â Â Â Â Â Â The Texas Supreme Court also held that, based on the provisions of the Act, the
injured "employee should be able to pursue workers' compensation benefits from either"
and that, "[i]f either has elected not to provide coverage, but still qualifies as an 'employer'
under the Act, then that employer should be subject to common law liability without the
benefit of the defenses enumerated in section 406.033." Garza v. Exel Logistics, Inc., 161
S.W.3d 473, 475 (Tex. 2005) (quoting Wingfoot, 111 S.W.3d at 143).
Â Â Â Â Â Â Â Â Â Â It is therefore clear that it is possible for both Chrome and Scot to be Neal's
employers for purposes of the Act. It is also clear that, because both entities were covered
by workers' compensation, employees (as defined by the Act) of both entities can only
recover under the terms of the Act. It is also clear that an employee of one company who
is under a contract of hire to the other company, when both have workers' compensation
coverage, is as a matter of law restricted to recovery under the Act. Garza, 161 S.W.3d
at 473; Wingfoot, 111 S.W.3d at 134.
Â Â Â Â Â Â Â Â Â Â The question in this case is whether there is a fact issue on whether Chrome placed
itself outside the protection of the Act by affirmatively stating in its responses to requests
for admissions that Neal has never been its employee.
Â Â Â Â Â Â Â Â Â Â Any matter admitted in response to a request for admissions is conclusively
established unless the court on motion permits withdrawal or amendment of the admission. 
Tex. R. Civ. P. 198.3; Marshall v. Vise, 767 S.W.2d 699, 700 (Tex. 1989). It constitutes a
judicial admission, and the answering party may not then introduce evidence to controvert
it. Marshall, 767 S.W.2d at 700; Beasley v. Burns, 7 S.W.3d 768, 769 (Tex.
App.âTexarkana 1999, pet. denied). Further, in cases involving summary judgments, the
trial court cannot consider affidavits offered by the nonmovant to contradict the deemed
admissions. Beasley, 7 S.W.3d at 770; Cherry v. N. Am. Lloyds of Tex., 770 S.W.2d 4, 6
(Tex. App.âHouston [1st Dist.] 1989, writ denied); see Masterson v. Hogue, 842 S.W.2d
696, 697 (Tex. App.âTyler 1992, no writ). These concepts, however, apply only to
answers to a request for admissions about facts. Answers merely constituting admissions
of law are not binding on the court. Am. Title Co. v. Smith, 445 S.W.2d 807, 809â10 (Tex.
Civ. App.âHouston [1st Dist.] 1969, no writ). 
Â Â Â Â Â Â Â Â Â Â The term "employee" has a technical meaning as defined by the Labor Code, and
that definition is what Neal now seeks to apply to Chrome's admission. However, that
definition does not automatically apply to discovery requests, and Neal did not adopt that
definition, or any other, in his request. The term "employee" can have different meanings
in different contexts. Chrome objected to the request for admissions on the basis that it
lacked specificity as to the term and answered the request subject to the objection. Neither
party requested a ruling on the objection, and the rules provide that a party need not
request a ruling on its own objection to preserve that objection. Tex. R. Civ. P. 193.4(b). 
Â Â Â Â Â Â Â Â Â Â A question asking whether a person is an employee of a company at a particular
time would ordinarily be a request to admit a factual matter. Under Neal's theory of the
case as articulated before the trial court and on appeal, however, the request asks Chrome
to admit a legal conclusionâthat Neal has never been an employee for workers'
compensation purposes. Requestors may not compel parties to answer legal conclusions. 
Credit Car Ctr., Inc. v. Chambers, 969 S.W.2d 459, 464 (Tex. App.âEl Paso 1998, no
pet.); see Gore v. Cunningham, 297 S.W.2d 287, 291 (Tex. Civ. App.âBeaumont 1956,
writ ref'd n.r.e.). And such conclusions do not bind the court. Fort Bend Cent. Appraisal
Dist. v. Hines Wholesale Nurseries, 844 S.W.2d 857, 858â59 (Tex. App.âTexarkana
1992, writ denied). A deemed admission of a purely legal issue is of no effect. Id.
Â Â Â Â Â Â Â Â Â Â Under this state of the record, Chrome's admissions had no effect. Thus, Chrome
conclusively proved that it was an employer of Neal and that he was covered by workers'
compensation insurance while in its employ. Under the authorities cited above, that is
sufficient to show that Neal's exclusive remedy was through the workers' compensation
system.
Â 

Â Â Â Â Â Â Â Â Â Â We affirm the judgment.


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Donald R. Ross
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice




DISSENTING OPINION
Â Â Â Â Â Â Â Â Â Â Wisconsin Hard Chrome admitted Jimmy Neal was never its employee and objected
that the term "employee" lacked specificity. 
Â Â Â Â Â Â Â Â Â Â A request to admit or deny that a particular person was an employee of one of the
parties at the time of the accident has routinely been utilized. See Hughes Wood Prods.,
Inc. v. Wagner, 18 S.W.3d 202, 208 n.4 (Tex. 2000); United States Fire Ins. Co. v.
Maness, 775 S.W.2d 748, 749â50 (Tex. App.âHouston [1st Dist.] 1989, writ ref'd); Smith
v. Univ. of Tex., 664 S.W.2d 180, 189 (Tex. App.âAustin 1984, writ ref'd n.r.e.); Ill.
Employers Ins. Co. v. Lewis, 582 S.W.2d 242, 244 (Tex. Civ. App.âBeaumont), writ ref'd
n.r.e., 590 S.W.2d 119 (Tex. 1979); Missouri-Kansas-Texas R.R. Co. v. Franks, 399
S.W.2d 905, 907 (Tex. Civ. App.âDallas 1966, writ dism'd by agr.); Halbert v. Sylestine,
292 S.W.2d 135, 138 (Tex. Civ. App.âBeaumont 1956, no writ). One court even
chastised a party for attempting to evade such a question. Sanchez v. Caroland, 274
S.W.2d 114, 115â17 (Tex. Civ. App.âFort Worth 1954, no writ) (the question as to
whether the person operating Sanchez' truck was in the course of Sanchez' employment
was a matter about which Sanchez should be fully informed, or at least should have been
in a position to ascertain the facts by reasonable inquiry). The majority opinion
acknowledges that such a question is ordinarily a request to admit a factual matter. 
However,without citation to any authority that such an admission is a legal conclusion, the
majority concludes that this request calls for a legal conclusion. I disagree. 
Â Â Â Â Â Â Â Â Â Â The majority opinion states that Neal seeks to use Chrome's admission to lead to
the legal conclusion that Neal was never Chrome's employee for the purposes of workers'
compensation. The fact that Neal wants to use the admission for that purpose does not
make the admission a legal conclusion. The admission is a factual oneâNeal never
worked for Chrome. A court is presented with facts on which it relies to arrive at legal
conclusions. Here, Neal established the fact that he was not an employee of Chrome. It
is the Court's function to determine the legal effect of that fact. 
Â Â Â Â Â Â Â Â Â Â The majority opinion states that Chrome objected to the request on the basis it
lacked specificity. While that is true, it has no bearing on whether the question called for
a legal conclusion. The relevance of that objection simply is that the term "employee"
could be argued to have several definitions and none was specified. If the term
"employee" as used in this context is vague or nonspecific, then a very good argument is
available that the admission is not specific enough to lead to the conclusion that Neal was
not an employee of Chrome for workers' compensation purposes. In fact, Chrome makes
such an argumentâthat its admission concerning Neal's employment status only meant 
that Chrome did not issue Neal's paychecks. 
Â Â Â Â Â Â Â Â Â Â In this case, Neal alleged that he suffered exposure to toxic substances on the
premises of Chrome and that Chrome was negligent and that negligence was a proximate
cause of Neal's injuries. Chrome answered, asserting that Neal's claim was barred and
that Neal's exclusive remedy was through the Texas Workers' Compensation Act. In these
circumstances, I find that the request was specific. Chrome was defending Neal's claim
based on the Workers' Compensation Act, which includes a specific definition of
"employee." That definition is not a technical term needing further clarification (each
person in the service of another under a contract of hire), but is a term commonly used and
understood. Such admissions have been recognized by Texas courts for many years. 
Â Â Â Â Â Â Â Â Â Â I would find that the admission is binding and raises material facts which preclude
the granting of summary judgment. I respectfully dissent. 
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Jack Carter
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Date Submitted:Â Â Â Â Â Â July 6, 2005
Date Decided:Â Â Â Â Â Â Â Â Â September 29, 2005



o:idmap v:ext="edit" data="1"/>
 









 
 
 
 
 
 
 




Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

 In
The

   Court
of Appeals

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Sixth
Appellate District of Texas at Texarkana

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  No. 06-10-00031-CR

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  OLIVER HART,
III, Appellant

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  V.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  THE STATE OF TEXAS, Appellee

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 


Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  On Appeal from the 5th Judicial District Court

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Bowie County, Texas

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Trial Court
No. 06F0380-005

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Before Morriss, C.J.,
Carter and Moseley, JJ.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Memorandum Opinion by Justice Carter








Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  MEMORANDUM OPINION

Â 

Oliver Hart, III, pled not guilty to the
charge of possession of a controlled substance (methamphetamine), of more than
400 grams.Â  After a jury trial where
Michelle Holmes testified against Hart, he was found guilty, and the trial
court sentenced him to forty-five yearsÂ imprisonment. Â The trial court also awarded $1,500.00 in
attorneyÂs fees against Hart.Â  

In a previous case, Hart absconded during
his trial, was tried in absentia, found guilty, and assessed a thirty-year
sentence.Â  As a result, the police had an
arrest warrant for Hart andÂ Â Â Â 
information that he was in HolmesÂ apartment with a gun.Â  When the police arrived, Holmes told them
Hart was Âin the back room with a gun.ÂÂ 
The police searched the premises and found Hart hiding in a closet.Â  While searching for Hart and the gun, the
police discovered 400 grams of methamphetamine in various places throughout the
apartment.Â  

On appeal, Hart argues that: Â (1) he was denied a speedy trial; (2) there
was insufficient evidence corroborating HolmesÂ testimony; and (3) there was
legally and factually insufficient evidence to support the award of attorneyÂs
fees. 

We modify the judgment because there is no
evidence supporting the award of attorneyÂs fees, and we affirm the judgment,
as modified, because:Â  (1) Hart was not
denied a speedy trial; and (2) there is sufficient evidence that tends to
connect Hart to the charged crime.

I.Â Â Â Â Â Â Â Â Â  Speedy
Trial

Â 

Â Â Â Â Â Â Â Â Â Â Â  In his first
point of error, Hart contends that his constitutional rights were violated
because he did not receive a speedy trial.Â Â 


Â Â Â Â Â Â Â Â Â Â Â  An accusedÂs
right to a speedy trial is guaranteed by both the Constitutions of the United
States and Texas.Â  U.S. Const. amends. IV, XIV; Tex. Const.
art. I, Â§ 10.Â  In determining whether an
accused has been denied his or her right to a speedy trial, a court must use a
balancing test Âin which the conduct of both the prosecution and the defendant
are weighed.Â Â Barker v. Wingo, 407 U.S. 514, 530
(1972).Â  The factors to be weighed in the
balance include, but are not necessarily limited to, the length of the delay,
the reason for the delay, the defendantÂs assertion of his or her speedy trial
right, and the prejudice to the defendant resulting from the delay.Â  Id.Â  No single factor is necessary or sufficient
to establish a violation of the right to a speedy trial.Â  Id.
at 533; Dragoo v. State, 96 S.W.3d
308, 313 (Tex. Crim. App. 2003).Â  In
conducting this balancing test, Âthe conduct of both the prosecution and the
defendant are [to be] weighed.Â Â Id. at 530.Â  The defendantÂs burden of proof on the latter
two Barker factors varies inversely
with the StateÂs degree of culpability for the delay.Â  Cantu
v. State, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008) (citing Robinson v. Whitley, 2 F.3d 562, 570
(5th Cir. 1993)).Â  ÂThus, the greater the
StateÂs bad faith or official negligence and the longer its actions delay a
trial, the less [an accused] must show actual prejudice or prove diligence in
asserting [the] right to a speedy trial.ÂÂ 
Id. at 280Â81.

Â Â Â Â Â Â Â Â Â Â Â  As stated in
Zamorano v. State, ÂIn reviewing the
trial courtÂs ruling on appellantÂs federal constitutional speedy trial claim,
we apply a bifurcated standard of review:Â 
an abuse of discretion standard for factual components, and a de novo
standard for the legal components.ÂÂ  84
S.W.3d 643, 648 (Tex. Crim. App. 2002).Â 
Review of the individual Barker
factors necessarily involves fact determinations and legal conclusions, but Âthe
balancing test as a whole . . . is a purely legal question.ÂÂ  Cantu,
253 S.W.3d at 282 (quoting Zamorano,
84 S.W.3d at 648 n.19).Â  ÂUnder the abuse
of discretion standard, appellate courts defer not only to a trial judgeÂs
resolution of disputed facts, but also to his right to draw reasonable inferences
from those facts.ÂÂ  Cantu, 253 S.W.3d at 282.

Â Â Â Â Â Â Â Â Â Â Â  We
examine the four Barker factors
separately. 

Â 

Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â  Length
of Delay

Â 

Â Â Â Â Â Â Â Â Â Â Â  Hart was
arrested on May 6, 2005, but was not tried until January 2010.Â  Four years and eight months elapsed between
HartÂs arrest and his trial.Â  Such a
lengthy delay is presumed to be prejudicial. Â Doggett
v. United States, 505 U.S. 647 (1992)
(most delays of eight months or more are considered presumptively unreasonable
and prejudicial); Barker, 407 U.S. at
530. Therefore, this factor weighs against the State.

Â Â Â Â Â Â Â Â Â Â Â  B.Â Â Â Â Â Â Â  Reason
for the Delay

Â 

Â Â Â Â Â Â Â Â Â Â Â  When the
delay is determined to be presumptively prejudicial, the burden shifts to the
State to justify the delay.Â  Love v. State, 909 S.W.2d 930, 947 (Tex.
App.ÂEl Paso 1995, pet. refÂd) (citing
Green v. State, 760 S.W.2d 50, 52 (Tex. App.ÂEl Paso 1988, no pet.)); see also Turner v. State, 545 S.W.2d
133, 137Â38 (Tex. Crim. App. 1976).Â  Under
Barker, Âdifferent weightsÂ should be
attributed to this factor depending upon the different reasons for the delay. Â 407 U.S. at 531; Munoz v. State, 991 S.W.2d 818, 822 (Tex. Crim. App. 1999). Â A Âdeliberate attempt to delay the trialÂ
weighs heavily against the State, whereas a Âmore neutral reason, such as
negligence or overcrowded courts, should be weighedÂ less heavily against the
State. Â Munoz, 922 S.W.2d at 822 (quoting Barker, 407 U.S. at 531). Â ÂA
valid reason for the delay should not be weighed against the State.Â Â Id.Â  

Â Â Â Â Â Â Â Â Â Â Â  Here, the
State made no effort to try Hart for the charged offense until 2009, and the
State offered no explanation for this delay.Â 
However, the record does offer evidence regarding the reasons for the
delay from February 2009 to January 2010.Â 
The public defenderÂs office was appointed to represent Hart in February
2009, but five months later, in July, Hart moved to dismiss his public defender
and requested new appointed counsel.Â 
Hart retained Paul Hoover in August 2009, and Hoover requested, and
received, a continuance.Â  Hoover
unexpectedly passed away in October 2009, and John Stroud, III, was appointed
to take over HooverÂs cases, including HartÂs.Â 
In December, Stroud withdrew from the case, and the court, once again,
appointed the public defenderÂs office to represent Hart on January 7,
2010.Â  Eight days later, Hart filed a
motion to dismiss for denial of a speedy trial.Â 
At most, Hart is responsible for seven of the fifty-six months of the
delay in this trial.Â  Due to the extended
delay for which the State offered no explanation, this factor weighs heavily
against the State.

Â Â Â Â Â Â Â Â Â Â Â  C.Â Â Â Â Â Â Â  Assertion
of the Right to Speedy Trial

Â 

Â Â Â Â Â Â Â Â Â Â Â  The accused bears the
responsibility to assert his or her right to a speedy trial. Â Cantu,
253 S.W.3d at 282. Â ÂThe more serious the
deprivation, the more likely a defendant is to complain.Â Id. at 283 (quoting Barker,
407 U.S. at 531). Â An accusedÂs assertion
of his or her speedy trial right (or the failure to assert the right) Âis
entitled to strong evidentiary weight in determining whether the [accused] is
being deprived of the right.Â Â Id.; Harris
v. State, 827 S.W.2d 949, 957 (Tex. Crim. App. 1992) (Â[A]ppellantÂs lack
of a timely demand for a speedy trial indicates strongly that he did not really
want a speedy trial.Â); see Barker,
407 U.S. at 536 (Â[B]arring extraordinary circumstances, we would be reluctant
indeed to rule that a defendant was denied this constitutional right on a
record that strongly indicates . . . that the defendant did not want a speedy
trial.Â). Â As the Fifth Circuit stated in
United States v. Palmer, Âthe point
at which the defendant asserts his right is important because it may reflect
the seriousness of the personal prejudice he is suffering.Â Â 537 F.2d 1287, 1288 (5th Cir.1976). Â 

Â Â Â Â Â Â Â Â Â Â Â  Here,
shortly after being appointed in January 2010, HartÂs public defender filed a
motion to dismiss for denial of a speedy trial.[1]Â  However, Hart failed to seek a speedy trial
before moving to dismiss the charges against him.Â  ÂFiling for a dismissal instead of a speedy
trial will generally weaken a speedy-trial claim because it shows a desire to
have no trial instead of a speedy one.ÂÂ  Cantu, 253 S.W.3d at 282Â83. Â If a defendant seeks to dismiss his or her charges
prior to seeking a speedy trial, Âhe should provide cogent reasonsÂ for doing
so.Â  Id.
at 283.Â  ÂRepeated requests for a
speedy trial weigh heavily in favor of the defendant, while the failure to make
such requests supports an inference that the defendant does not really want a
trial, he wants only a dismissal.ÂÂ  Id.Â 


Â Â Â Â Â Â Â Â Â Â Â  Hart
failed to assert his right to a speedy trial for more than four years.Â  In January 2010, Hart filed to dismiss the
charges against him without having first sought a speedy trial and without
providing cogent reasons for such failure.Â 
We conclude these facts weigh against a finding that Hart was denied a
speedy trial.

Â Â Â Â Â Â Â Â Â Â Â  D.Â Â Â Â Â Â Â  Prejudice

Â 

Â Â Â Â Â Â Â Â Â Â Â  ÂBecause Âpretrial
delay is often both inevitable and wholly justifiable,Â the fourth Barker factor examines whether and to
what extent the delay had prejudiced the defendant.Â Â Cantu,
253 S.W.3d at 285 (quoting Doggett,
505 U.S. at 656). Â In analyzing the
prejudice to the accused, we must do so in light of the accusedÂs Âinterests
that the speedy-trial right was designed to protect: (1)Â to prevent
oppressive pretrial incarceration[;] (2) to minimize the accusedÂs anxiety and
concern[;] and (3) to limit the possibility that the accusedÂs defense will be
impaired.Â Â Id. (citing Dragoo, 96
S.W.3d at 315). Â Of these three types of
prejudice, Âthe last is the most serious Âbecause the inability of a defendant
adequately to prepare his case skews the fairness of the entire system.ÂÂ Â Id.
(quoting Dragoo, 96 S.W.3d at 315). Â Although Âa showing of Âactual prejudiceÂ is
not required in Texas,Â the accused has the burden to make some showing of
prejudice that was caused by the delay of the trial. Â Harris
v. State, 489 S.W.2d 303, 308 (Tex. Crim. App. 1973) (quoting Courtney v. State, 472 S.W.2d 151, 154 (Tex.
Crim. App. 1971)).

Â Â Â Â Â Â Â Â Â Â Â  Hart
has made no showing that he suffered anxiety or concern that resulted from this
case, beyond that associated with any criminal charge or investigation. Â[E]vidence
of generalized anxiety, though relevant, is not sufficient proof of prejudice
under the Barker test, especially
when it is no greater anxiety or concern beyond the level normally associated
with a criminal charge or investigation.Â Â Cantu,
253 S.W.3d at 286.

Â Â Â Â Â Â Â Â Â Â Â  Hart also failed
to show how his defense was impaired, other than making unsupported, general
allegations regarding the Âlack of reliability of witnessesÂ memories from an
event that occurred almost five years ago . . . .Â and Âthe difficulty of
finding witnesses from almost five years ago.ÂÂ 
While Hart was incarcerated for much of the fifty-six months prior to
his trial in this case, the incarceration was not due solely to this
charge.Â  During the pendency of these
charges, Hart was incarcerated based on previous criminal convictions.Â  We conclude this factor weighs against Hart.

Â Â Â Â Â Â Â Â Â Â Â  Here, the State
failed to provide any explanation of why it waited almost five years to try
Hart on this charge.Â  However, Hart
failed to seek a speedy trial or produce evidence that he was prejudiced by the
delay.Â  Based upon the factors discussed
above and weighing the evidence in this case, we conclude that the trial court
reasonably concluded that Hart was not denied his constitutional right to a
speedy trial. 

II.Â Â Â Â Â Â Â  Accomplice
Witness Corroboration

Â 

Â Â Â Â Â Â Â Â Â Â Â  At trial, Holmes
testified against Hart, stating that the gun and drugs found in her apartment
were his.Â  Hart argues that there is
insufficient evidence to corroborate HolmesÂ testimony.[2],
[3]Â  We disagree. 

Â Â Â Â Â Â Â Â Â Â Â  The test is
whether, after excluding the accompliceÂs testimony, there is other evidence of
an incriminating character which tends to connect the defendant with the
commission of the offense. Â Castillo v. State, 221 S.W.3d 689, 691 (Tex.
Crim. App. 2007).Â  It needs only to link
the accused to the commission of the crime and show that Ârational jurors could
conclude that this evidence sufficiently tended to connect [the accused] to the
offense.ÂÂ  Malone v. State, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008).Â  If the State fails to produce any
nonaccomplice evidence tending to connect the defendant to the offense, then
the defendant is entitled to an acquittal. Â See Tex. Code Crim. Proc. Ann. art. 38.14
(Vernon 2005); Taylor v. State, 10
S.W.3d 673, 685 (Tex. Crim. App. 2000).

Â Â Â Â Â Â Â Â Â Â Â  There
is no specific amount of nonaccomplice corroboration evidence that is required
for sufficiency purposes; Â[e]ach case must be judged on its own facts.ÂÂ  Gill v.
State, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994).Â  The Texas Court of Criminal Appeals has
stated that Â[p]roof that the accused was at or near the scene of the crime at
or about the time of its commission, when coupled with other suspicious
circumstances, may tend to connect the accused to the crime so as to furnish
sufficient corroboration to support a conviction.Â Â Brown v.
State, 672 S.W.2d 487, 489 (Tex. Crim. App. 1984). Â However, the Âmere presence alone of a
defendant at the scene of a crime is insufficient to corroborate accomplice
testimony.Â Â Golden v. State, 851 S.W.2d 291, 294 (Tex. Crim. App. 1993).

Â Â Â Â Â Â Â Â Â Â Â  Here, Hart
was being sought on a felony arrest warrant based on his prior conviction for
manufacturing methamphetamine.Â  After
receiving information that Hart was at HolmesÂs apartment, Lance Hall executed
the arrest warrant there and searched the apartment.Â  Hart did not rent the apartment or reside
there; however, there was evidence that Hart commonly stayed there, Âin and out,Â
for some time.Â  During the search of the
apartment, Hart was found hiding in a closet, and the officers also discovered
methamphetamine, a bag containing the chemicals necessary to manufacture
methamphetamine, and a shotgun.Â  The bag
found in the closet contained the shotgun, what appeared to be methamphetamine,
and the chemicals and various paraphernalia necessary to manufacture
methamphetamine.Â  In a letter Hart later
wrote to Holmes, he indicated that the shotgun (Âthe heatÂ) was Âin your room
in my bag.ÂÂ  On cross-examination, Hall
admitted that the shotgun and the bag were found in the bedroom Hart and Holmes
had been sharing, but that Hart was found hiding in a different bedroom.Â  

Â Â Â Â Â Â Â Â Â Â Â  Absent
HolmesÂ testimony, there is no direct evidence that Hart possessed or
controlled the drugs or gun, but there is some circumstantial evidence tending
to link him to the charged offense.Â  The
corroborative evidence may be circumstantial, and it is not necessary that the
corroboration directly link the accused to the crime or be sufficient in itself
to establish guilt. Â See Golden, 851 S.W.2d 291; Brown,
672 S.W.2d 487; Reynolds v. State,
489 S.W.2d 866 (Tex. Crim. App. 1972).Â 
The defendantÂs presence at or near the scene of the crime, when coupled
with other suspicious circumstances, may be sufficient to link the defendant to
the crime.Â  Brown, 672 S.W.2d at 489.Â 
This is not a case where Hart was merely present at the time of the
arrest.Â  Rather, he was on the run from a
conviction for manufacturing methamphetamine; he hid in a closet when the
police arrived; and a bag containing a gun, methamphetamine, and the chemicals
necessary to manufacture methamphetamine were found in the bedroom he and
Holmes were sharing. Â HartÂsÂ 
letter to Holmes about the gun being in his bag has some further
tendency to connect him to the crime.Â Â 
We find sufficient corroborative evidence to support HolmesÂ testimony.Â  Therefore, we overrule this point of
error.Â Â  

III.Â Â Â Â Â Â  Assessment of AttorneyÂs Fees

Â 

Â Â Â Â Â Â Â Â Â Â Â  The judgment
against Hart includes an award of $1,500.00 in attorneyÂs fees to the State
against Hart.Â  In his third and fourth
points of error, Hart contends that there is legally and factually insufficient
evidence to support the trial courtÂs award of attorneyÂs fees against him.[4]Â  We agree.

Â Â Â Â Â Â Â Â Â Â Â  Â The Texas Code of Criminal Procedure allows
the imposition of attorneyÂs fees Âif the court determines that a defendant has
financial resources that enable him to offset in part or in whole the costs of
the legal services provided.ÂÂ  Tex. Code Crim. Proc. Ann. art.
26.05(g) (Vernon Supp. 2010).Â  Here, the
trial court found that Hart was indigent.Â 
There is no evidence supporting a finding that he is able to offset any
of the costs of legal services provided.Â 
As the State candidly acknowledges, the assessment of attorneyÂs fees is
erroneous.Â Â  

Â Â Â Â Â Â Â Â Â Â Â  Accordingly,
we find the evidence supporting the courtÂs award of attorneyÂs fees is legally
insufficient.Â  We sustain this point of
error and modify the judgment to delete the attorneyÂs fee award. Â 

Â Â Â Â Â Â Â Â Â Â Â  As modified,
we affirm the judgment.

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Jack
Carter 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Justice


Â Â Â Â Â Â Â Â Â Â Â  

Date Submitted:Â Â Â Â Â Â Â Â Â  September
20, 2010

Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â  October
1, 2010

Â 

Do Not Publish 

Â 

Â 

Â 











[1]In
May 2006, Hart sought a speedy trial for trial cause numbers 04F0217-005,
04F0218-005, 04F0555-005, and 04F0556-005, but did not seek a speedy trial for
the charges against him in this case, trial cause number 06F0380-005.Â  In July 2009, Hart filed several pro se
motions to dismiss, arguing that the State failed to timely indict him on the
charges and serve him with a copy of the indictment.Â  However, his motions failed to request a speedy
trial or otherwise invoke his right to a speedy trial.





[2]Citing
our decision in Cochran v. State, the
State contends that by admitting his guilt during the punishment phase of the
trial, Hart waived any challenge to the sufficiency of the evidence
corroborating HolmesÂ testimony.Â  107
S.W.3d 96, 100 (Tex. App.ÂTexarkana 2003, no pet.).Â  However, the defendant in Cochran challenged the sufficiency of
the evidence of guilt, rather than the sufficiency of the corroborating
evidence; therefore, Cochran is
inapplicable.Â  Id.Â  Furthermore, the
sufficiency of corroborating evidence is not subject to procedural default;
therefore, HartÂs admission of guilt in the punishment phase of the trial is
irrelevant.Â  Patterson v. State, 204 S.W.3d 852, 856Â58 (Tex. App.ÂCorpus
Christi 2006, pet. refÂd).

Â 





[3]It
is undisputed that Holmes was an accomplice to the charged offense. 





[4]Hart
also argues that there is insufficient evidence to find that he had financial
resources to offset attorneyÂs fees.Â  

Â