

NUMBER 13-09-00169-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**ALAINE DENISE VORHEIER,**                                                 **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                    **Appellee.**

---

### On appeal from the 25th District Court
### of Guadalupe County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides, and Vela
### Memorandum Opinion by Justice Vela

A jury convicted appellant, Alaine Denise Vorheier, of four counts of sexual assault of a child, *see* TEX. PENAL CODE ANN. § 22.011(a)(2)(C) (Vernon Supp. 2009), three counts of indecency with a child by contact, *see id*. § 21.11(a)(1), and one count of prohibited sexual conduct. *See id*. § 25.02(a)(2). The jury assessed punishment at eighteen years'

imprisonment for each count of sexual assault of a child and for each count of indecency with a child by contact and ten years' imprisonment for the offense of prohibited sexual contact. The sentences were ordered to run concurrently. In six issues, appellant complains that: (1) the evidence is legally and factually insufficient to support her convictions; (2) she was denied the right to a speedy trial; and (3) this Court does not have jurisdiction of this appeal. We affirm.[1]

## I. FACTUAL BACKGROUND

### A. State's Evidence

When J.V. was five or six years old, his parents divorced, and he began living in Converse, Bexar County, Texas with his biological father, who subsequently married appellant. J.V. testified that from the age of six to the time he was thirteen, his relationship with appellant was "just like any other mother and son." However, when J.V. was thirteen years old, the relationship became sexual. In December 2003, J.V. and appellant were at home while J.V.'s father attended a Christmas party. While J.V. was in his room, appellant came in and wanted J.V. to kiss her in the same way he kissed his girlfriend. When he refused to kiss appellant, she started rubbing his penis through his clothing. He moved her hand and told her that if she did not leave him alone, he would tell his father. After hearing this, appellant left the room. J.V. testified that "it happened again" several times which made it a "fairly regular thing." J.V. also testified that appellant would masturbate him to the "point of orgasm" and that a couple of months after the first incidence in his bedroom,

---

[1] This appeal was transferred to this Court from the Fourth Court of Appeals by order of the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 22.220 (Vernon 2004) (delineating the jurisdiction of appellate courts); TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005) (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer).

2

the "activity" advanced "to sex," meaning his "male sex organ" would go into appellant's "female sex organ." J.V. and appellant first had sexual intercourse when he was fourteen years old and living in Converse, Texas. When the family moved to Cibolo, Guadalupe County, Texas, J.V. was fourteen years old, and he and appellant continued to have sex "once or twice a week."

Between July 2004 and May 2006, appellant touched J.V.'s genitals on at least five occasions and engaged in sexual intercourse with him on at least six occasions in Cibolo, Guadalupe County, Texas. About May 2005, appellant became pregnant with J.V.'s child. Appellant gave birth to J.V.'s child on February 5, 2006, while J.V. was living in Cibolo. J.V. moved out of Cibolo and out of Guadalupe County, in July 2006.

With regard to what happened in Cibolo, J.V. testified as follows:

Prosecutor: Would all the—you said sexual contact continued there. What kind of sexual contact did you have in Cibolo?

J.V.: The same that was in Converse, intimate or intercourse.

Prosecutor: Were there also times that—that she [appellant] would—to use your terminology, engage in other types of contact, such as masturbation or anything like that?

J.V.: Yes.

Prosecutor: Was this on a fairly regular basis?

J.V.: Yes, it was.

Prosecutor: How often could you say it happened?

J.V.: Once or twice a week.

. . . .

Prosecutor: Let me ask you this: The periods between July of 2004, and May of 2006, did [appellant] touch your genitals on at least two

3

occasions, two—excuse me, three, four, five occasions?

J.V.:        Yes.

Prosecutor: And during this time did you engage in sexual intercourse with [appellant] on at least six occasions?

J.V.:        Yes.

Prosecutor: And these were all in Cibolo, Guadalupe County, Texas?

J.V.:        Yes.

Prosecutor: And you are the stepchild of the [appellant], correct?

J.V.:        Correct.

J.V. further testified that he had sexual intercourse with appellant "on as many as six occasions," and it also occurred "while she was pregnant with J.V.'s child and after she had the baby." J.V. stated that on at least six occasions, appellant fondled and touched his penis "in a manner to arouse or gratify her sexual desire."

On April 23, 2008, J.V. went to the Cibolo Police Department and spoke to a detective. J.V. filled out an affidavit "withdrawing" the charges that were made against appellant, trying to essentially "get this case dropped." J.V. stated that it was his father's idea" that he go down to the Cibolo Police Department.

On cross-examination, defense counsel asked J.V. about the first time he made his "outcry" regarding what happened between him and appellant. He testified that the outcry precipitated after a series of events at a rock concert called Ozzfest in Selma, Texas. J.V. attended the rock concert with his sister, father, J.V.'s friend, who was a minor, and appellant. J.V. stated that after appellant had her chest painted,[2] she approached him.

---

[2] J.V. explained that at Ozzfest, some women "take off their bras and shirts, and they get their chest painted."

4

When she grabbed J.V.'s wrists, he pushed her away. Afterwards, the police handcuffed J.V. and put him in the back of a police car. An officer told J.V. that he was not under arrest, but that he needed to detain him while he talked to J.V.'s father. J.V.'s friend went over to the police car and talked to J.V., who told him that what J.V.'s father "suspected had been going on between" him and appellant "was true." That night, J.V. stayed with his biological mother. There, J.V. told officers what had happened between appellant and him. J.V. testified that he was purposefully vague because his mother, grandmother, and friend were in his presence while he talked to the police. The officers took J.V. to the police station that night "so they could do a one-on-one." J.V. stated he did not remember what he told police because at that point, he "wasn't really trusting of anybody" and that he did not "want to tell anybody the whole story."

With respect to J.V.'s child, J.V. testified that appellant had told his father that "she had been raped" and that the doctor informed the family that "she had amnesia." At that moment, J.V. and J.V.'s father found out appellant was pregnant. When asked by defense counsel if J.V.'s father ever found them "in an inappropriate position" in bed, J.V. testified that "he [J.V.'s father] caught her sleeping with" him.

William Carter, Ph.D., a psychologist specializing in psychological evaluations and sexual dynamics, was asked by the prosecutor if a teenage boy in J.V.'s position "would be confused about the fact that he's getting some pleasure from this?", Dr. Carter replied that "the body does what the body's going to do. I think if he engages in sex, there's going to be something about it that is physically pleasurable." Dr. Carter stated that when he sees an abuse victim "displaying oppositional defiant disorder . . . and if there is a quasi incestuous relationship going on," he would say that it "helps explain at least part of the

5

defiance." He said that when a child victim of sexual abuse signs an affidavit of non-prosecution, it "means that he wants the entire thing to go away" and "what he wants is some closure." He stated that "most children" do not lie about being sexually assaulted and that teenagers are not "good with calendar dates." When asked if there are families "that express their affection and love through masturbating the teenage boys," Dr. Carter stated that "would be very far out of the norm."

On cross-examination, Dr. Carter testified that "there are times" when children lie about being sexually assaulted. Defense counsel pointed out that Dr. Carter had never met or counseled appellant or J.V.

## B. Defense Evidence

Appellant's mother testified that she was "very much" involved in appellant's life and will "assist her in every way" she possibly could. On cross-examination, the State asked her if she was aware that appellant "had contact with J.V. when she wasn't supposed to have it." Appellant's mother replied that she "had no knowledge that she [appellant] did."

## II. DISCUSSION

### A. Sufficiency of the Evidence

We first address issues five and six wherein appellant contends the evidence is legally and factually insufficient to support her convictions. Specifically, she argues that J.V.'s trial testimony was vague and inconsistent.

#### 1. Standard of Review

"'In assessing the legal sufficiency of the evidence to support a criminal conviction, we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror

6

could have found the essential elements of the crime beyond a reasonable doubt.'" *Roberts v. State*, 273 S.W.3d 322, 326 (Tex. Crim. App. 2008) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)).  In a factual-sufficiency review, the only question to be answered is:  "Considering all of the evidence in a neutral light, was a jury rationally justified in finding guilt beyond a reasonable doubt?*" Grotti v. State*, 273 S.W.3d 273, 283 (Tex. Crim. App. 2008).

Evidence can be deemed factually insufficient in two ways:  (1) "the evidence supporting the conviction is 'too weak' to support the fact finder's verdict"; or (2) "considering conflicting evidence, the fact finder's verdict is 'against the great weight and preponderance of the evidence.'"  *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009) (quoting *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006)).  The court of criminal appeals has "set out three 'basic ground rules' implementing this standard."  *Id*. (quoting *Watson*, 204 S.W.3d at 414).  First, the appellate court must consider all of the evidence in a neutral light, as opposed to in a light most favorable to the verdict.  *Id*.  Second, the appellate court "may only find the evidence factually insufficient when necessary to 'prevent manifest injustice.'"  *Id*.  (quoting *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997)).  Third, the appellate court must explain why the evidence is too weak to support the verdict or why the conflicting evidence greatly weighs against the verdict.  *Id*.  Although the verdict is afforded less deference during a factual-sufficiency review, an appellate court is not free to "override the verdict simply because it disagrees with it."  *Id*.

Our review of a legal and factual sufficiency challenge should be examined under the principles of review for a hypothetically correct jury charge.  *Grotti*, 273 S.W.3d at 280-

7

81. "'Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof, or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).

When "there is some testimony that is inconsistent about the times and locations involved" in a crime, it is for the "jury to conclude beyond a reasonable doubt that offenses occurred and that they occurred" in that certain county. *See Dunn v. State*, 125 S.W.3d 610, 616 (Tex. App.–Texarkana 2003, no pet.). "When an indictment alleges that a crime occurred "on or about" a certain date, the State can rely upon an offense with a date other than the one specifically alleged so long as the date is anterior to the presentment of the indictment and within the statutory limitation period of the offense. . . ." *Yzaguirre v. State*, 957 S.W.2d 38, 39 (Tex. Crim. App. 1997) (citing *Sledge v. State*, 953 S.W.2d 253 (Tex. Crim. App. 1997)). It is the jury's role to judge a witness's credibility, including assessing his motive to lie, and to choose to believe or disbelieve some or all of a witness's testimony. *See Lange v. State*, 57 S.W.3d 458, 465 (Tex. App.–Amarillo, 2001, pet. ref'd.).

**2. Legal Sufficiency**

**a. Applicable Law-Sexual Assault of a Child**

In counts five through eight, the jury convicted appellant of four counts of sexual assault of a child. Section 22.011 of the Texas Penal Code provides that a person commits the offense of sexual assault of a child if the person intentionally or knowingly "causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor." TEX. PENAL CODE ANN. § 22.011(a)(2)(C).

To prove count five, as set forth in the jury charge, the State was required to establish beyond a reasonable doubt that appellant on or about September 15, 2005, in Guadalupe County, Texas "intentionally or knowingly cause[d] the sexual organ of [J.V.] to contact or penetrate the defendant's sexual organ, and the said [J.V.] was then and there a child younger than 17 years of age and not the spouse of the defendant . . . ." Count six contained the same language as count five, except that count six alleged that the offense occurred on or about October 15, 2005. Count seven contained the same language as counts five and six, except that count seven alleged that the offense occurred on or about May 24, 2006. Count eight contained the same language as the other counts, except that it alleged that the offense occurred on or about June 15, 2006.

Appellant contends the evidence is legally insufficient to support her convictions because J.V.'s testimony at trial "was vague or uncertain." J.V. testified that he lived in Guadalupe County from August or September 2004 until July 2006. The evidence also established that J.V. was younger than seventeen years old at the time of the offenses. Appellant was married to J.V.'s father at the time of the alleged conduct. J.V. stated that between July 2004 and May 2006 appellant engaged in sexual intercourse with him, which meant placing J.V.'s penis inside appellant's vagina, on at least six occasions in Cibolo, Guadalupe County, Texas. A child victim's description of what occurred need not be precise, and wide latitude is given to the testimony of a child victim in a sexual abuse case. *Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990). Moreover, a defendant's intent can be inferred from the acts, words, and conduct of the accused. *See Hernandez v. State*, 819 S.W. 2d 806, 810 (Tex. Crim. App. 1991); *DeLeon v. State*, 77 S.W.3d 300, 312 (Tex. App.–Austin 2001, pet. ref'd). Here, J.V. provided direct testimony concerning

9

the occasions, which occurred "once or twice a week," where appellant and J.V. engaged in sexual intercourse.  Accordingly, the jury could have reasonably inferred that appellant knowingly or intentionally caused the sexual organ of J.V. to contact or penetrate appellant's sexual organ, therefore establishing each count of sexual assault of a child. *See* TEX. PENAL CODE ANN. § 22.011(a)(2)(C).

**b. Applicable Law-Indecency With a Child**

In counts nine through eleven, the jury convicted appellant of three counts of indecency with a child.  Section 21.11 of the Texas Penal Code provides that a person commits the offense of indecency with a child "if, with a child younger than 17 years and not the person's spouse, . . . the person:  (1) engages in sexual contact with the child or causes the child to engage in sexual contact . . . ."  *Id.* § 21.11(a)(1).  Sexual contact includes the following acts "if committed with the intent to arouse or gratify the sexual desire of any person:"  "(1) any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child; or (2) any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person."  *Id*. § 21.11(c).  To prove count nine, as set forth in the charge, the State was required to establish beyond a reasonable doubt that appellant on or about May 23, 2006, in Guadalupe County, Texas "intentionally or knowingly engage[d] in sexual contact with [J.V.] by touching any part of the genitals of [J.V.], and the said [J.V.] was a child younger that [sic] 17 years of age and not the spouse of the defendant . . . ."  Count ten contained the same language as count nine, except that it alleged that the offense occurred on or about May 25, 2006.  Count eleven contained the same language as the other counts, except that it alleged that the offense occurred on or about May 27, 2006.

10

Appellant contends the evidence is legally insufficient to support her convictions because J.V.'s testimony at trial was "generic and non-specific." Here, J.V. clearly testified that on at least six occasions, appellant fondled and touched his penis "in a manner to arouse or gratify her sexual desire." At the time appellant "fondle[d]" J.V.'s penis, J.V. was under the age of seventeen and not married to appellant. It is within the jury's exclusive province to judge the credibility of a witness and to assign the weight to be given to his testimony. *See Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996).

### c. Applicable Law-Prohibited Sexual Conduct

In count twelve, the jury convicted appellant of prohibited sexual conduct. Section 25.02 of the Texas Penal Code provides that "[a] person commits an offense [of prohibited sexual conduct] if the person engages in sexual intercourse or deviate sexual intercourse with another person the actor knows to be, without regard to legitimacy: . . . the actor's current or former stepchild or stepparent." TEX. PENAL CODE ANN. § 25.02(a)(2) (Vernon Supp. 2009). "'Sexual intercourse' means any penetration of the female sex organ by the male sex organ." *Id*. § 25.02(b)(2). To prove count twelve as set forth in the charge, the State was required to establish beyond a reasonable doubt that appellant on or about May 24, 2006, in Guadalupe County, Texas "intentionally or knowingly engage[d] in sexual intercourse with [J.V.], a person the defendant knew to be, without regard to legitimacy, the defendant's stepchild . . . ."

Again, appellant contends the evidence is legally insufficient to support her conviction because J.V.'s testimony lacks specificity. While on direct-examination, J.V. testified that he and appellant had engaged in sexual intercourse as late as May 2006 in Guadalupe County. In May 2006, J.V. was under seventeen years of age, not married to

11

appellant, and he was appellant's stepchild.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found beyond a reasonable doubt the essential elements of sexual assault of a child, indecency with a child by contact, and prohibited sexual conduct.

### 3. Factual Sufficiency

For each of the counts, appellant contends the evidence before the trial court was factually insufficient because J.V.'s trial testimony was vague, his dates and locations where the alleged conduct took place were inconsistent, and his statements that were videotaped and made to police were either untruthful or conflicting.

In July 2006, J.V. told the police about the nature of his relationship with appellant. J.V.'s testimony was not so vague that the jury would have had trouble deciphering when, where, or how the conduct took place. It is for the jury to judge the credibility of the witness. *See Cain*, 958 S.W.2d at 408-409. J.V. testified that all of the alleged incidents with appellant occurred between July 2004 and May 2006. Here, appellant claims that J.V. "mixed up his dates," and therefore the counts are not consistent with the actual dates of occurrence. Moreover, appellant contends J.V. did not "keep a diary" of what was occurring between him and appellant. However, J.V.'s testimony and the counts in the indictment allege that the dates are "on or about" the dates of the incidents. The State may rely upon an offense with a date other than the one specifically alleged. *See Yzaguirre*, 957 S.W.2d at 39; *Garcia v. State*, 981 S.W.2d 683, 686 (Tex. Crim. App. 1998) (explaining that time is not a material element of an offense, and, in some cases, it is impossible for the State to know precisely, or even approximately, when the charged offense occurred). Further, J.V. provided the events that led to the first time he and

12

appellant had intercourse in chronological order.  J.V. stated that, after he and appellant

first had sexual intercourse, the two would have intercourse "once or twice a week."

"Whether the sequence of events [as testified to by a child] was alleged to have occurred,

one, ten, fifty or one hundred times does not by itself impact the believability of the child's

story."  *Dixon v. State*, 201 S.W.3d 731, 735 (Tex. Crim. App. 2006).  Considering all of the

evidence neutrally, we hold that the evidence supporting the verdict is not so weak as to

make the findings of guilt clearly wrong or manifestly unjust, nor is the verdict against the

great weight and preponderance of the evidence.  We hold that the evidence is both legally

and factually sufficient to support the convictions.  Issues five and six are overruled.

**B. Speedy Trial**

In issue four, appellant complains she was denied the right to a speedy trial.  *See*

U.S. CONST. amend. VI; TEX. CONST. art. I, § 10.[3]

### 1. Standard of Review

When reviewing the trial court's ruling on a speedy-trial motion, we use a bifurcated

standard of review.  *Cantu v. State*, 253 S.W.3d 273, 282 (Tex. Crim. App. 2008).  We

apply "an abuse-of-discretion standard for factual components, and a de novo standard for

the legal components."  *Id*.  Those standards are well established, and a detailed recitation

of them need not be repeated here.  It is sufficient to note that the trial court's ruling will be

affirmed only if it is supported by the record and is correct under the applicable law.  *Shaw*

*v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003).  When, as here, the trial court does

---

[3] Article I, section 10 of the Texas Constitution also guarantees the accused in all criminal cases the right to a speedy and public trial.  *See* TEX. CONST. art. I, § 10.  This right exists independently of the federal guarantee, but the court of criminal appeals analyzes claims of a denial of the state speedy-trial right under the same four *Barker* factors.  *Cantu v. State*, 253 S.W.3d 273, 280 n.16 (Tex. Crim. App. 2008); *see Barker v. Wingo*, 407 U.S. 514, 530 (1972).

not make written findings of fact and conclusions of law, findings supported by evidence will be implied in favor of the trial court's ruling, and we must defer to such findings. *See State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999).

### 2. Applicable Law

The Sixth Amendment to the United States Constitution guarantees the accused in a criminal case the right to a speedy trial. *Cantu*, 253 S.W.3d at 280. The right to a speedy trial:

> attaches once a person becomes an "accused," [i.e.,] once he or she is arrested or charged. Supreme Court precedent requires [us] to analyze federal constitutional speedy-trial claims 'on an ad hoc basis' by first weighing and then balancing the four *Barker v. Wingo* factors: (1) length of the delay[;] (2) reason for the delay[;] (3) assertion of the right[;] and (4) prejudice[4] to the accused. While the State has the burden of justifying the length of the delay, the [accused] bears the burden of proving the assertion of the right and showing prejudice. The [accused's] burden of proof on the latter two [*Barker*] factors 'varies inversely' with the State's degree of culpability for the delay.

*Id*. (citing *Robinson v. Whitley*, 2 F.3d 562, 570 (5th Cir. 1993)). "Thus, the greater the State's bad faith or official negligence and the longer its actions delay a trial, the less [an accused] must show actual prejudice or prove diligence in asserting [the] right to a speedy trial." *Id*. at 280-81.

"Once the *Barker* test is triggered, courts must analyze the speedy-trial claim by first weighing the strength of each of the *Barker* factors and then balancing their relative weights in light of 'the conduct of both the prosecution and the defendant.'" *Cantu*, 253 S.W.3d at 281 (quoting *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002)) (quoting *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). No single "factor is 'either a

---

[4]*See Ex parte McKenzie*, 491 S.W.2d 122, 123 (Tex. Crim. App. 1973) (stating that "if an accused made a prima facie showing of prejudice, the State 'must carry the obligation of proving that the accused suffered no serious prejudice beyond that which ensued from the ordinary and inevitable delay'").

14

necessary or sufficient condition to the finding of a deprivation of the'" speedy-trial right; rather, "the four factors are related and must be considered together along with any other relevant circumstances." *Id*. Because no factor has "'talismanic'" qualities, we must engage "'in a difficult and sensitive balancing process'" in each case. *Id*. (quoting *Barker*, 407 U.S. at 533).

"Upon a finding that an accused's Sixth Amendment speedy-trial right was actually violated, . . . dismissal of the charging instrument with prejudice is mandated." *Id*. "Because dismissal of the charges is a radical remedy, a wooden application of the *Barker* factors would infringe upon 'the societal interest in trying people accused of crime, rather than granting them immunization because of legal error.'" *Id*. (quoting *United States v. Ewell*, 383 U.S. 116, 121 (1966)). Thus, we "must apply the *Barker* balancing test with common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that [an accused's] actual and asserted interest in a speedy trial has been infringed." *Id*.; *see Barker*, 407 U.S. at 534-35 (finding a five-year delay did not violate the speedy-trial requirement when the record showed the accused did not want a speedy trial). "The constitutional right is that of a speedy trial, not dismissal of the charges." *Id*.

### 3. Analysis

### a. First *Barker* Factor: Length of the Delay

The first *Barker* factor is measured from the time the accused is arrested or formally charged until the time the accused asserted the speedy-trial right. *United States v. Marion*, 404 U.S. 307, 321 (1971); *see Cantu*, 253 S.W.3d at 280.

### 1. Time of Arrest

Appellant was arrested on September 12, 2006 for the initial charge. She was released on October 4, 2006. In addition, she was incarcerated from July 11, 2008 until July 14, 2008, and from September 22, 2008 until September 23, 2008. Appellant's time in jail totaled twenty-nine days.

### 2. Time of Formal Charges

On September 12, 2006, appellant was formally charged but waived indictment. Appellant was not arrested or formally accused with any other charge until May 10, 2007, at which time she was charged with the original charge and three additional charges. On April 23, 2008, approximately twenty-nine months later, appellant first asserted her right to a speedy trial.[5] On July 9, 2008, all of the charges against appellant were dropped because the State's indictment was "faulty." Appellant was reindicted on July 10, 2008, for the same allegation contained in her previous indictment, plus eight additional charges.

### 3. Analysis

"The *Barker* test is triggered by a delay which is unreasonable enough to be 'presumptively prejudicial.'" *Cantu*, 253 S.W.3d at 281 (citing *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992)). No set time element exists that triggers the analysis, but the court of criminal appeals has held that a four-month delay is not sufficient while a seventeen-month delay is. *Id*. In *Doggett*, the Supreme Court noted that courts "have generally found post-accusation delay 'presumptively prejudicial' at least as it approaches one year." 505 U.S. at 652 n.1.

---

[5] The trial court denied appellant's motion to dismiss for lack of speedy trial on January 14, 2009.

In this case, approximately twenty-nine months elapsed from the time appellant was indicted until the time she asserted her speedy-trial right. Therefore, we conclude the delay was presumptively prejudicial, thereby resolving the first *Barker* factor in appellant's favor and warranting analysis of the three remaining *Barker* factors.

**b. Second *Barker* Factor: Reason for the Delay**

When the delay is determined to be presumptively prejudicial, the burden shifts to the State to justify the delay. *Turner v. State*, 545 S.W.2d 133, 137-38 (Tex. Crim. App. 1976). Under *Barker*, "different weights" should be attributed to this factor depending upon the different reasons for the delay. 407 U.S. at 531; *Munoz*, 991 S.W.2d at 822. A "'deliberate attempt to delay the trial'" weighs heavily against the State, whereas a "'more neutral reason, such as negligence or overcrowded courts, should be weighed'" less heavily against the State. *Munoz*, 922 S.W.2d at 822 (quoting *Barker*, 407 U.S. at 531). "A valid reason for the delay should not be weighed against the State." *Id*.

Here, the record shows that both the State and appellant were both responsible for delay. The State admitted that it was responsible for the delay: (1) when appellant was arrested on September 12, 2006 until October 4, 2006, when the case was filed by information to which appellant pleaded guilty and she waived indictment; (2) when the presentence investigation report (PSI) was delayed between December 18, 2006 until February 7, 2007; and (3) when the first indictment was dismissed, from July 9, 2008 to August 19, 2008, when appellant was re-indicted and the case was placed back on the docket for arraignment.[6]

---

[6] The State, alleging that it acted in good faith, dismissed the original charges against appellant because the indictment was "faulty." The indictment contained a charge for sexual assault where it alleged that appellant "did then and there intentionally or knowingly cause the contact with or penetration of the sexual

17

Appellant's delays included:  (1) from February 7, 2007 until April 11, 2007, when she requested a continuance in order to obtain new counsel; (2) from April 11, 2007 through December 17, 2007, when appellant withdrew her guilty plea requiring  the State to present an indictment to a grand jury, which necessitated a new arraignment date and a trial docket setting; (3) when she requested a continuance because she was not prepared to go to trial  until the results of a paternity test were obtained; (4) a request for a forensic psychologist, which demonstrated that she was not ready for trial; and (5) from August 19, 2008 until October 10, 2008, when appellant requested a continuance because her counsel was unavailable, in which she requested that the court continue the case "until some future date."

In addition, the State and appellant had mutual delays.  The mutual delays included six stipulated written resets, which were signed by the State, appellant, and appellant's counsel.[7]

The State's effort to cure the defective indictment and delay in preparation of the PSI weighed against the State.  However, appellant's delays, which included requesting a continuance in order to obtain new counsel, withdrawing her guilty plea, and requesting a continuance so that she could obtain paternity testing, a forensic psychologist, and an investigator, weigh against appellant.  Appellant's continuances demonstrate that she, like the State, at times was not prepared to go to trial and thus contributed to the overall delay

organ of [J.V.] a child who was then and there younger than 17 years of age and not the spouse of the defendant, by defendant's sexual organ." The language contained in the charge was considered confusing and defective because appellant, a female, cannot physically use her sexual organ to penetrate the sexual organ of J.V., a male.

[7] The dates included:  October 4, 2006 through December 18, 2006; December 17, 2006 through March 12, 2008; March 12, 2008 through June 17, 2008; June 17, 2008 through July 19, 2008; October 10, 2008 through October 29, 2008; and October 29, 2008 through January 14, 2009.

of the case.

### c. Third *Barker* Factor: Assertion of the Speedy-Trial Right

Appellant first asserted her right to a speedy trial on April 23, 2008.[8] The accused bears the responsibility to assert[9] his or her right to a speedy trial. *Cantu*, 253 S.W.3d at 282. "'The more serious the deprivation, the more likely a defendant is to complain.'" *Id*. at 283 (quoting *Barker*, 407 U.S. at 531). An accused's assertion of his or her speedy-trial right (or the failure to assert the right) "is entitled to strong evidentiary weight in determining whether the [accused] is being deprived of the right." *Id*.; *Harris v. State*, 827 S.W.2d 949, 957 (Tex. Crim. App. 1992) ("[A]ppellant's lack of a timely demand for a speedy trial indicates strongly that he did not really want a speedy trial."); *see Barker*, 407 U.S. at 536 ("[B]arring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates, as does this one, that the defendant did not want a speedy trial."). As the Fifth Circuit stated in *United States v. Palmer*, "the point at which the defendant asserts his right is important because it may reflect the seriousness of the personal prejudice he is suffering." 537 F.2d 1287, 1288 (5th Cir. 1976).[10] We conclude this factor weighs against appellant.

---

[8] Appellant's assertion of her right to a speedy trial occurred on April 23, 2008. On August 15, 2008, appellant next asserted her right in a "motion to dismiss with prejudice for lack of speedy trial." Appellant did not request a hearing on the this motion until October 22, 2008, at which time she withdrew the motion. On January 14, 2009, appellant finally presented the motion to the trial court.

[9] Although a person cannot file a speedy-trial motion until formal charges are made, the person can assert his or her speedy-trial right in other ways. *Cantu*, 253 S.W.3d at 283. The United States Supreme Court has held that "invocation of the speedy trial provision . . . need not await indictment, information, or other formal charge." *Dillingham v. United States*, 423 U.S. 64, 65 (1975).

[10] In *Palmer*, the Fifth Circuit noted that because the defendant "first asserted his right thirty months after his arrest, which was one month after he first received notification of his indictment, and he complained at that time only of the 22-month pre-indictment delay," his "silence during the entire pre-indictment period

19

### d. The Fourth *Barker* Factor:  Prejudice

"Because 'pretrial delay is often both inevitable and wholly justifiable,' the fourth *Barker* factor examines whether and to what extent the delay had prejudiced the defendant."  *Cantu*, 253 S.W.3d at 285 (quoting *Doggett*, 505 U.S. at 656).  In analyzing the prejudice to the accused, we must do so in light of the accused's "interests that the speedy-trial right was designed to protect:  (1) to prevent oppressive pretrial incarceration[;] (2) to minimize the accused's anxiety and concern[;] and (3) to limit the possibility that the accused's defense will be impaired."  *Id*. (citing *Dragoo v. State*, 96 S.W.3d 308, 316 (Tex. Crim. App. 2003)).  Of these three types of prejudice, "the last is the most serious 'because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'"  *Id*. (quoting *Dragoo*, 96 S.W.3d at 316).  Although "a showing of 'actual prejudice' is not required in Texas," the accused has the burden to make some showing of prejudice that was caused by the delay of the trial.  *Harris v. State*, 489 S.W.2d 303, 308 (Tex. Crim. App. 1973) (quoting *Courtney v. State*, 472 S.W.2d 151, 154 (Tex. Crim. App. 1971)).

At the motion to dismiss hearing, appellant and her counsel testified as to the "prejudice she suffered" as a result of the delays.  In her appellate brief, appellant further argues that, as a result of such delays, she suffered prejudice for the following reasons: (1) she was "ordered not to be in the presence of [her husband's] daughter," which required her to live outside the family home; (2) she was ordered not to be around J.V. or any other minor children, which consequently prevented her from seeing her husband or children; (3)

---

works against him because it suggests that any hardships he suffered were either minimal or caused by other factors."  *United States v. Palmer*, 537 F.2d 1287, 1288 (5th Cir. 1976).

her hours at work were reduced, she was suspended, and she was unable to find other employment; and (4) the complaining witness, J.V., had "difficulty recalling the events that happened two or more years before the time of trial." Furthermore, appellant was incarcerated for twenty-nine days over the course of this case, the final two days of which were a result of a violation of her bond when she tested positive for cocaine.

Appellant has made no showing that she suffered anxiety or concern that resulted from this case, beyond that associated with any criminal charge or investigation. "[E]vidence of generalized anxiety, though relevant, is not sufficient proof of prejudice under the *Barker* test, especially when it is no greater anxiety or concern beyond the level normally associated with a criminal charge or investigation." *Cantu*, 253 S.W.3d at 286. The record shows that the court order prohibiting contact with her husband's daughter was the result of a custody case and not the pending criminal case against her. Further, the court order prohibiting her from being in contact with minor children lasted for a period of two or three months. This was an appropriate amount of time because she had been charged with sexual assault and indecency with a minor child. Regarding appellant's employment status, the record reflects that "a news story that was aired in San Antonio" involving appellant's criminal case resulted in appellant's temporary suspension without pay.[11] However, this is not prejudice beyond that normally associated with criminal charges or investigations. *See id.* In addition, appellant failed to show how her defense was impaired, although she does assert that J.V.'s memory was diminished because of the delay. J.V., however, was a witness for the prosecution, and any impairment or "difficulty

_____

[11] One of the factual "major evils protected against by the speedy trial guarantee" stated in *United States v. Marion* was present, i.e., disruption in employment or drainage of financial resources. 404 U.S. at 320.

recalling the events" would likely benefit rather than prejudice her defense. *See Barker*, 407 U.S. at 534. ("the inability of a defendant to adequately prepare his case skews the fairness of the entire system . . . . There is also prejudice if *defense witnesses* are unable to recall accurately events of the distant past.") (emphasis added). Lastly, appellant's total time of incarceration over the twenty-nine month period was twenty-nine days and is not considered "oppressive pretrial incarceration." *See Palacios v. State*, 225 S.W.3d at 169. Furthermore, her final two days were a result of her use of cocaine. We conclude this factor weighs against appellant.

### 3. Balancing the *Barker* Factors

The record in this case supports the trial court's denial of appellant's speedy-trial motion. The only evidence appellant proffered that would weigh in her favor would be the State's delays due to its defective indictment. However, appellant had delays as well when she requested new counsel, paternity testing, and other experts. In addition, appellant failed to show any oppressive pretrial incarceration or any substantial personal or defense prejudice resulting from the delay, demonstrating that the trial court did not err in denying appellant's motion for a speedy trial. We hold appellant was not denied her right to a speedy trial. Issue four is overruled.

## C. Jurisdiction

In issues one, two, and three, appellant contends this Court lacks jurisdiction over this appeal. First, she argues that chapter 73 of the Texas Government Code violates the Equal Protection Clause of the United States Constitution because it does not give proper effect to the voters of Texas who elect the justices of the intermediate appellate courts. *See* U.S. CONST. amend. XIV. TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005). Second,

appellant argues that this Court lacks jurisdiction over this appeal because the Texas Supreme Court's order transferring her appeal to this Court is unconstitutional under the Texas Constitution due to a conflict between the Texas Constitution and chapter 73 of the Texas Government Code. Third, she claims this Court lacks jurisdiction over this appeal because the order of transfer is a void exercise of legislative authority over the judiciary in violation of the Separation of Powers provision contained in article II, section 1 of the Texas Constitution. See TEX. CONST. art. II, § 1. She requests that we transfer this appeal back to the Fourth Court of Appeals.

The Texas Supreme Court may transfer cases to this Court pursuant to section 73.001 of the Texas Government Code "at any time that, in the opinion of the supreme court, there is good cause for transfer." TEX. GOV'T CODE ANN. § 73.001; *see also Arocha v. State*, No. 08-07-00108-CR 2009 WL 1883733, at *4 (Tex. App.–El Paso June 30, 2009) (mem. op., not designated for publication) (pet. dism'd improvidently granted).[12] Section 73.002 provides that the transferee court of appeals "has jurisdiction of the case without regard to the district in which the case originally was tried and to which it is returnable on appeal." TEX. GOV'T CODE ANN. § 73.002. Appellant argues her constitutional issues as challenges to our jurisdiction. Generally, a party is not required to preserve a challenge to the court of appeals' jurisdiction. *See Arocha*, 2009 WL 1883733, at *5. However, the Eighth Court of Appeals in *Arocha* concluded that constitutional jurisdictional challenges such as this must be preserved, because "[e]ven if Section 73.001 is unconstitutional as

---

[12] The Court of Criminal Appeals granted discretionary review to determine whether the Eighth Court of Appeals erred in rejecting Arocha's jurisdictional arguments on the basis of a procedural default, however, upon reviewing the record, it concluded that granting Arocha's petition was improvident. *Arocha v. State*, No. PD-1189-90, 2010 WL 2618421 (Tex. Crim. App. June 30, 2010).

applied to [Arocha], we would not be divested of jurisdiction" under section 73.002. *Id.*

The proper procedure for obtaining a transfer between appellate courts is by motion to the Texas Supreme Court. See TEX. GOV'T CODE ANN. § 73.001. The Texas Supreme Court has established the following procedure for a transfer:

> The party requesting transfer should file a copy of the motion to transfer in each of the two courts of appeals, asking that, when the motion is forwarded to the Supreme Court, each court of appeals advise the Supreme Court in writing whether it has any objection to the proposed transfer. Any briefs in favor of the proposed transfer should also be filed in each court of appeals and forwarded with the transfer motion. We will then have the motion, the briefs, and the comments of the two courts of appeals in determining whether to grant the motion to transfer.

*Id.* (citing *Miles v. Ford Motor Co.*, 914 S.W.2d 135, 137 n.2 (Tex. 1995)). Failure to follow the established procedure results in failure to preserve complaints about the transfer of an appeal. *See id.*

The State contends that appellant failed to utilize the procedure for seeking a transfer of her appeal. Appellant's brief mentions a document that she urges was filed with the Texas Supreme Court, entitled "Special Appearance and Objection to Case Transfer of Case From Courts of Appeals," yet no copy of this document was included in the record. Regardless, from the title of the document we cannot discern if it serves in any way to comport with proper procedure for requesting a transfer. If appellant had followed the procedure and her motion had been granted, her complaints about the constitutionality of section 73.001 would be remedied. *Id.* Alternatively, if her motion were denied, this Court would be in a position to address the constitutional issues. *Id.* We conclude appellant did not follow the proper procedure requesting transfer, and, therefore, her complaint is not preserved. We overrule appellant's first, second, and third issues.

24

## III. Conclusion

We affirm the judgment of the trial court.

ROSE VELA
Justice

Do not publish.
Tex. R. App. P. 47.2(b).

Delivered and filed the
19th day of August, 2010.